IN RE RICHARD WATSON.

(Filed 6 December, 1911.)

1. Legislative Enactments — Constitutional Law — Interpretation— Courts.

In passing upon the constitutionality of a legislative enactment it is the duty of the court to declare the law as expressed by the people in the Constitution, having respectful regard for the coördinate department of the Government in the Legislature, the agent of the people under their Constitution, resolving all reasonable doubts in favor of its acts.

2. Same—Minors—Reformatory—Parens Patriæ.

The Legislature has no unlimited and arbitrary power over minors in respect to detaining them in reformatories, and enactments relating thereto are justified only upon the idea that the child is without parental care, and that his environments are such that he may reach manhood without restraint or training under corrupting influences, unless the State, as *parens patriæ*, performs the duty which devolves primarily upon the parent.

3. Same—Vagrants.

The Legislature has constitutional authority to establish reformatories, "where vagrants and persons guilty of misdemeanors shall be restrained and usefully employed," and therein youthful criminals may be detained and reformed before they become hardened in crime; and the legislative power in this respect exists, in the absence of a prohibition in the Constitution, though not expressly given.

4. Same—Bill of Rights.

The punishment for vagrancy cannot exceed thirty days under our statute, and a legislative act which provides for a longer detention of a child in a reformatory for that offense, if merely for the purpose of punishment, would be violative of section 14 of the Bill of Rights.

5. Constitutional Law—Vagrants—Minors—Reformatory—Trial by Jury—Due Process.

The constitutional right of trial by jury does not extend to an investigation into the status and needs of a child upon the question as to whether he should be sent to a reformatory for his own good as well as the good of the community in the interest of good citizenship, nor does the restraint therein put upon

*In re* WATSON.

the child amount to a deprivation of his liberty without due process of law, within the meaning of the declaration of the Bill of Rights, nor is it a punishment for crime.

**6. Reformatory—Commitment—Parent and Child—Notice—Habeas Corpus.**

When a child is placed and detained in a reformatory under order of court, without notice to the parent or giving him an opportunity to be heard, the parent may have the legality of the detention inquired into upon his petition for a writ of *habeas corpus*.

**7. Same—Requisites.**

Upon the parent's petition for a writ of *habeas corpus* for his child detained in a reformatory under an order of court, he must show that he has applied to the authorities in charge of his child for his release, and that he was, at the time of the commitment, and still is, a fit and proper person to have the care of the child.

**8. Reformatory—"Conviction"—Sentence—Punishment — Interpretation of Statutes.**

The act creating the Stonewall Jackson Training School is "for the training and moral development of the criminally delinquent children of the State," and the superintendent is "intrusted with the authority for correcting and punishing any inmate thereof to the same extent as a parent may, under the law, impose upon his own child," and in its general scheme and purposes is for the benefit of a child therein detained. Hence, the provisions in the act that the child committed thereto must be "convicted" and "sentenced" by the court, construing the act as a whole, does not mean that detention therein is an imprisonment as a punishment for a crime, but that the "conviction" is merely evidence that the child needs the care and nurture of the State, and that the sentence is an order of detention.

**9. Reformatory—Commitment—Irregularities—Habeas Corpus.**

Mere irregularity in the order of commitment by the court of a child to a proper reformatory will not entitle the child to a discharge upon the suing out of a writ of *habeas corpus*.

**10. Same—Age of Child—Parent and Child—Notice—Investigation —Corrections.**

Upon petition for *habeas corpus* by the father for the unlawful detention of his child committed to a reformatory by the court, it is proper for the judge upon the hearing to inquire into the age of the child when the court's record is silent thereon. The order of the committing magistrate should include a finding as

to notice and of the age of the child, and show that it is made after investigation and because it is for the best interests of the child, and it is not error for this to be done at the hearing of the writ before judgment then rendered.

APPEAL from decision of *Mr. Justice Walker* in proceedings in *habeas corpus,* from MECKLENBURG.

This proceeding was commenced by a petition for a writ of *habeas corpus,* by S. S. Watson, in behalf of his minor son, Richard Watson, restrained in the Stonewall Jackson Manual Training and Industrial School since 27 August, 1909, by virtue of a conviction on that date in the recorder's court of the city of Charlotte for the crime of vagrancy, said petition being also made by S. S. Watson on his own behalf to regain the custody and care of his son. The petition was addressed to *Mr. Justice Walker,* under date of 27 July, 1911.

The writ was issued addressed to Walter Thompson, superintendent of the Stonewall Jackson Manual Training and Industrial School in Cabarrus County, returnable at Charlotte, 8 August, 1911. On the return thereto the hearing was held in chambers on said date at said place.

In the return to the writ the respondent justified the detention of Richard Watson by virtue of two commitments, one issued by the recorder of Charlotte, dated 27 August, 1909, and set forth above under heading, "Original commitment," and another issued *nunc pro tunc,* dated 25 July, 1911, as of 27 August, 1909, and set forth above under heading, "Commitment *nunc pro tunc,* No. 1," said commitment issued by the same authority as the original.

Petitioner, through his attorney, objected to the introduction or consideration by the court of "Commitment *nunc pro tunc,* No. 1," on the ground that the recorder had no authority to amend same from memory, and that the records of the court nowhere showed that at the time of the trial said Richard Watson was under the age of 16 years of age. Objection overruled. Petitioner excepted, which was petitioner's first exception.

Petitioner then objected to its introduction or consideration by the court, on the ground that the Commitment *nunc pro tunc,*

*In re* WATSON.

No. 1, was addressed to the superintendent or keeper of the Stonewall Jackson Manual Training and Industrial School, whereas the original commitment was addressed to the keeper of the common jail of Mecklenburg County, and that the recorder was without authority to make such amendment. Objection overruled. Petitioner excepted, and this was petitioner's second exception.

Petitioner then moved the court to discharge Richard Watson from the custody of the respondent, in that in neither of the commitments did it appear what the age of the petitioner's son, Richard Watson, was at the time of the commitment, nor did such appear in any other records in the case, and that therefore there was nothing in the commitments or other records from which either the respondent or the petitioner's son, Richard Watson, could ascertain when the period of confinement would come to an end, and that each and both of said commitments were therefore void. Motion overruled. Petitioner excepted, and this was petitioner's third exception.

The petitioner then offered witnesses to prove that S. S. Watson, the father of the minor, Richard Watson, was at the date of the hearing a fit and proper person to have the custody of his son, and to prove the other allegations of paragraph 5 of the petition. Respondent's attorney, in open court, thereupon stated that they did not controvert the allegations of paragraph 5 of the petition. Whereupon petitioner, through his attorney, moved the court to order that S. S. Watson have the care and custody of his minor son, Richard Watson, and that the respondent deliver Richard Watson to him for said purpose. Motion overruled. Petitioner S. S. Watson excepted. This was petitioner's fourth exception.

The petitioner then moved the court to order the discharge of the said Richard Watson from the custody of the respondent, on the ground that Richard Watson had only been convicted of the crime of vagrancy, the punishment for which is fixed by law at thirty days imprisonment, and that Richard Watson had already been confined by virtue of the conviction for the crime of vagrancy nearly two years, and that any act of the Legislature purporting to authorize his detention for a period exceed-

*In re* WATSON.

ing thirty days and extending over a period of at least five years for the conviction of the crime of vagrancy is unconstitutional and void, in that, in attempting to so authorize, it deprives him of the rights guaranteed to him as a citizen of this State and the United States contained in sections 1, 14, and 33, Article I of the Constitution of North Carolina, and Articles XIII and XIV of the amendments to the Constitution of the United States, and deprives him of his constitutional and natural rights in other particulars, all of which points are set forth in paragraph 4 of the petition. Motion denied. Petitioner excepted, and this was petitioner's fifth exception.

The court then, of its own motion, called to the stand S. S. Watson, and questioned him as to the age of Richard Watson, and as to what his age was at the date of the trial of said Richard Watson for vagrancy. Petitioner, through his attorney, objected on the ground that it was too late, at the hearing on the return to the writ of *habeas corpus,* to take testimony which should have been taken at the trial in the recorder's court, and which was not, and which finding of fact was necessary to have been ascertained and incorporated in the judgment and commitment to make the restraint of the petitioner's son legal. Objection overruled. Petitioner excepted, and this was petitioner's sixth exception.

Said S. S. Watson then testified as follows: "Richard Watson, my son, as nearly as I can remember, was born about the 29th day of November, 1894."

The court, then, of its own motion, called D. B. Smith, who was recorder of the city of Charlotte, 27 August, 1909, and who is now recorder, to the stand, and asked him whether or not he found as a fact at the trial of the said Richard Watson that he was under the age of 16 years. The recorder, Hon. D. B. Smith, testified as follows: "I took testimony at the trial and found that Richard Watson was at that time under the age of 16 years." The court then stated that the recorder might incorporate into the commitments and other records of the court the true age of Richard Watson at the time of said trial in the recorder's court, and also might correct the records in such other particulars as might be necessary. Petitioner objected

on the ground that the court's power and authority on the return to the writ of *habeas corpus* was limited to the right to ascertain and judicially decree whether or not the petitioner's son was illegally restrained of his liberty at that time, and did not extend to taking testimony that should have been taken at the trial of the case in the recorder's court, which testimony was not taken, and did not extend to so adding to the records of the court as to make his detention, after such addition to the records, legal, where before taking such testimony after the return to the writ, and additions to the records, the restraint was illegal. Objection overruled, and this was petitioner's seventh exception.

In compliance with this action of the court, an additional commitment was issued by said recorder, and is found in the records under the head "Commitment *nunc pro tunc*, No. 2."

The court then rendered judgment as appears in the record, and the petitioner and the said Richard Watson duly excepted, and this was the petitioner's eighth exception. And thereupon the petitioner and the said Richard Watson appealed to the Supreme Court.

WARRANT FOR ARREST RICHARD WATSON.

NORTH CAROLINA—MECKLENBURG COUNTY.
    CITY OF CHARLOTTE, IN THE RECORDER'S COURT.

THE STATE AND THE CITY OF CHARLOTTE  } *Before D. B. Smith,*
                        *v.*                 } *Recorder.*
            RICHARD WATSON.                   }

T. M. Christenbury, being duly sworn, complains and says that on or about the 25th day of August, 1909, Richard Watson, with force and arms, at and in the county aforesaid, and within the city limits, did willfully, maliciously, and unlawfully become a vagrant, spending his time in idleness, against the statute in such cases made and provided, and against the peace and dignity of the State, and in violation of the city ordinance. Sec. . . . ., chap. . . . ., page . . . . .

    (Signed)  T. M. CHRISTENBURY, *Complainant.*

Subscribed and sworn before me, this 25th day of August, 1909.            (Signed)  W. B. ORR, J. P.  [SEAL.]

*In re* WATSON.

*State of North Carolina,*

*To the Chief of Police of the City of Charlotte, or other lawful officer of Mecklenburg County—Greeting:*

These are to command you forthwith to apprehend the said party and him have before D. B. Smith, recorder, at his office in the city of Charlotte, on the 26th day of August, 1909, then and there to answer the above complaint and be dealt with according to law.

Given under my hand and seal, this 25th day of August, 1909. (Signed) W. B. ORR, J. P. [SEAL.]

NORTH CAROLINA—MECKLENBURG COUNTY,

THE STATE AND CITY OF CHARLOTTE

*v.* } *Judgment.*

RICHARD WATSON.

Upon the trial of this case, the defendant is guilty, and is ordered and adjudged that........to be committed to the Stonewall Jackson Training School.

This the 27th day of August, 1909.

(Signed) D. B. SMITH, *Recorder.*

ORIGINAL COMMITMENT.

MECKLENBURG COUNTY—BEFORE THE RECORDER OF CHARLOTTE.

STATE

*v.* } *Commitment.*

RICHARD WATSON.

*To the Keeper of the Common Jail of Said County—Greeting:*

Whereas Richard Watson, the prisoner herewith sent you, has been required by me, the recorder of the city of Charlotte, you are hereby commanded to receive the said party in the Stonewall Jackson Training School.

He will be delivered to Officer J. E. McCall.

This the 27th day of August, 1909.

Charge: Vagrancy.

D. B. SMITH, *Recorder.*

W. B. ORR, *Desk Sergeant.*

*In re* WATSON.

COMMITMENT NUNC PRO TUNC, No. 1.

STATE OF NORTH CAROLINA—COUNTY OF MECKLENBURG.
BEFORE THE RECORDER OF THE CITY OF CHARLOTTE.

STATE AND CITY OF CHARLOTTE  ⎞
    *v.*     ⎬ *Commitment.*
 RICHARD WATSON.   ⎠

*To the Superintendent or Keeper of the Stonewall Jackson
 Manual Training and Industrial School—Greeting:*

Whereas Richard Watson was, on the 27th day of August, 1909, convicted before the recorder of the city of Charlotte on the charge of vagrancy, and was ordered committed to your institution by the said recorder; and whereas doubts have arisen as to the proper form of the said commitment; and whereas it appears to the court that the said Richard Watson is less than 16 years of age, and the court is of the opinion that it would be best for the said Richard Watson and the community that the said Richard Watson should be sentenced to your institution to keep, restrain, and control him during his minority or until such time as you shall deem proper for his discharge, under such proper and humane rules and regulations as may be adopted by the governing board of your institution as provided by the statute: You are, therefore, hereby authorized and empowered to receive the said Richard Watson into the said Stonewall Jackson Manual Training and Industrial School, there to remain until he is discharged according to law and the rules and regulations of the said institution.

The said Richard Watson was delivered to you by Officer J. E. McCall.

This 25 July, 1911, as of 27 August, 1909.

    (Signed)     D. B. SMITH,
     *Recorder of the City of Charlotte, N. C.*

COMMITMENT NUNC PRO TUNC, No. 2.

The following commitment was issued and filed after judgment, and bears date of the return day to the writ:

*In re* WATSON.

STATE OF NORTH CAROLINA—MECKLENBURG COUNTY.
    BEFORE D. B. SMITH, RECORDER OF THE CITY OF CHARLOTTE.

      STATE
        *v.*
RICHARD WATSON.

    The above-mentioned case coming on to be heard on 27 August, 1909, before the recorder of the city of Charlotte, upon a warrant duly issued, charging Richard Watson with being a vagrant, and having been heard, and it appearing to the court, and the court having found the following facts: That the said Richard Watson is under the age of 16 years, having been born on the 29th day of November, 1894, and that his father, with whom he has been residing, is being detained in the Mecklenburg County jail and is a confirmed dope fiend, and that his mother is dead, and his grandmother, with whom he has been living, is an inmate of the Mecklenburg County Home, and that the said Richard Watson has been loitering and sauntering about the streets of Charlotte, without any fixed place of abode and without any occupation or visible means of support:

    It is, therefore, adjudged and found as a fact that the said Richard Watson is a vagrant and under 16 years of age; and the said recorder of the city of Charlotte, being of the opinion that it would be best for the said Richard Watson and this community in which he has been so convicted, that he should be sentenced to the Stonewall Jackson Manual Training and Industrial School.

    It is also ordered and decreed that the said Richard Watson be committed to the Stonewall Jackson Manual Training and Industrial School, to the end that the trustees or other governing agencies thereof may keep, restrain, and control him during his minority, or until such time as they shall deem proper for his discharge; under such proper and humane rules and regulations as may be adopted by the said trustees, in accordance with the provisions of chapters 509 and 956 of the Public Laws of 1907.

    This the 8th day of August, 1911, as of the 27th day of August, 1909.     (Signed)     D. B. SMITH,
                      *Recorder of the City of Charlotte.*

It was not denied that, at the time of the arrest and trial of Richard Watson for vagrancy, his father, the petitioner, was in jail and was then an unfit person to have the custody of his child.

*William M. Wilson for appellants.*
*L. T. Hartsell and Shannonhouse & Jones for respondent.*

ALLEN, J. The principal questions considered in the able and carefully prepared brief of counsel for the petitioner are that the detention of Richard Watson is illegal, for that:

The act establishing the Stonewall Jackson Training School is unconstitutional, because (1) it provides for imprisonment as a punishment for crime, and in excess of that fixed by statute for vagrancy, and for such a length of time that it is cruel or unusual; (2) under it he is deprived of his liberty without due process of law; (3) that his detention, under the statute, amounts to involuntary servitude.

The duty is imposed on the courts of passing on the constitutionality of an act of the Legislature when the question is presented, and this duty arises from the obligation to declare what the law is.

The courts recognize the principles declared in the Constitution, that it is "ordained and established" by the people of the State, and "that all political power is vested in and derived from the people," and when a statute, which is the work of legislators, who are agents of the people, is contrary to its provisions, they sustain the will of the people as expressed in the Constitution, and not the will of their agents.

Respectful regard, however, for a coördinate department of the Government demands that the duty shall not be lightly undertaken, and that in its performance all reasonable doubts shall be resolved in favor of the legality of legislation.

The principle is so declared by *Chief Justice Clark* in *Sutton v. Phillips,* 116 N. C., 504, in which he says: "While the courts have the power, and it is their duty, in proper cases, to declare an act of the Legislature unconstitutional, it is a well-recognized principle that the courts will not declare that this coördinate branch of the Government has exceeded the powers vested in

*In re* WATSON.

it unless it is plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people"; and by *Justice Hoke* in *S. v. Baskerville,* 141 N. C., 818, that "It is well established that an act of the Legislature will never be declared unconstitutional unless it plainly and clearly appears that the General Assembly has exceeded its powers."

Applying these rules of construction, can it be said that the act is unconstitutional?

In determining this question, we must consider the purpose for which the act was passed, and the grounds upon which the State can rightfully exercise the power to detain minor children.

It is not an unlimited and arbitrary power, and is justified only upon the idea that the child is without parental care, and that this environment is such that he may reach manhood without restraint or training and under corrupting influences, unless the State, as *parens patriæ,* performs the duty which devolves primarily on the parent.

Outside of the humanitarian idea, which properly has its influence on courts and legislatures, and considered solely from the materialistic view, each citizen is interested in having men and women honest and law-abiding, because this conduces to the safety of his person and property; and a system which does no more than measure the days and years, which must be paid by him who has violated law, "to satisfy justice," is a survival of the days when the only object of punishment was vengeance.

Under this system, society receives no protection, except as the example deters others from the commission of crime; no hope is held out to the convict, and he is imprisoned with other criminals with the knowledge that, in all probability, at the end of his term he will be turned loose upon society, an expert in crime.

It has always been a perplexing question how far society has the right to demand a day or an hour of his life as an example, when he has been permitted to live amid surroundings that nourish and stimulate the criminal tendency.

The purpose of the act before us is to meet, in some measure, the duty imposed upon society, for its own protection and for the good of the child.

When we turn to the Constitution, we find that the establishment of a reformatory is not only not prohibited, but that it is expressly authorized by Article XI, sec. 4, which says: "The General Assembly may provide for the erection of house of correction, where vagrants and persons guilty of misdemeanors shall be restrained and usefully employed," and a house of correction, "as its name indicates, is designed for the reformation of youthful criminals, those who have not yet become hardened in crime." *Ex parte Moore,* 72 Cal., 11.

We are also of opinion that the power would exist without this provision of the Constitution, in the absence of a prohibition in that instrument.

If, then, the Legislature has the power to establish a reformatory, has it rightfully exercised this power, or has it, under the guise of reformation, made it possible to imprison as a punishment for crime?

If the latter construction is adopted, the restraint of the son of the petitioner is illegal, because the punishment for vagrancy, the charge made against the son, cannot exceed imprisonment, for thirty days, under the statute now in force, and the act under which a child might be held five years for that offense would be violative of section 14 of the Bill of Rights, which prohibits "cruel or unusual punishment."

The question as to the extent to which a child's constitutional rights are impaired by a restraint upon its freedom has arisen many times with reference to statutes authorizing the commitment of dependent, incorrigible, or delinquent children to the custody of some institution, and the decisions appear to warrant the statement, as a general rule, that, where the investigation is into the status and needs of the child, and the institution to which he or she is committed is not of a penal character, such investigation is not one to which the constitutional guaranty of a right to trial by jury extends, nor does the restraint put upon the child amount to a deprivation of liberty within the meaning of the Declaration of Rights, nor is it a punishment for crime.

In *McLean County v. Humphreys,* 104 Ill., 378, it is said: "It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriæ,* to

protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions, and all constitutional limitations must be so understood and construed as not to interfere with its proper and legitimate exercise."

And in *Jarrard v. State,* 116 Ind., 97, 17 N. E., 912: "We think it settled, in accordance with principle, that the Legislature has power to provide for the reformation of boys who are entering upon a career of wickedness, by prescribing measures for committing them to a reformatory institution."

In *Ex parte Ah Peen,* 51 Cal., 280, it was held that proceedings resulting in the committing of a minor child to an industrial school did not deprive such child of his liberty without due process of law, such proceedings not amounting to a criminal prosecution; the Court saying: "The purpose in view is not punishment for offenses done, but reformation and training of the child to habits of industry, with a view to his future usefulness when he shall have been reclaimed to society, or shall have attained his majority. Having been abandoned by his parents, the State, as *parens patriæ,* has succeeded to his control and stands *in loco parentis* to him. The restraint imposed upon him by public authority is in its nature and purpose the same which, under other conditions, is habitually imposed by parents, guardians of the person, and others exercising supervision and control over the conduct of those who are, by reason of infancy, lunacy, or otherwise, incapable of properly controlling themselves."

In *Reynolds v. Howe,* 51 Conn., 472, it was held that a statute providing that justices of the peace may commit to the State Reform School any boy under the age of 16 who is in danger of being brought up, or who is being brought up, to lead an idle or vicious life, does not deprive such minor of his liberty without due process of law, the Court saying: "But, as we have shown, the boy is not proceeded against as a criminal. Nor is confinement in the State Reform School a punishment, nor in any proper sense imprisonment. It is in the nature of a paren-

tal restraint. It is a mode of education to usefulness; compulsory, but not for that reason improper, and the restraint is a necessary incident of the compulsory education. It is all made necessary by the corrupting influences that surround and are likely to control the boy, and by the need of society for protection, and that necessity justifies the proceeding. To make the restraint and instruction of any permanent value, they must be continued for a long time. Habits are not changed in a month, not often in a year. This is specially true of bad habits. The attempt to reform viciously inclined boys would be an utter failure if limited to a few months."

In *Ex parte Liddell,* 29 Pac. R., 253, the Court says: "There can be no question as to the power of the Legislature to provide for the detention and education of juvenile offenders, as it has done in this act, and the provisions of the act are not obnoxious to the criticism that it prescribes unjust or unequal penalties. It is true, the term of detention at the reform school may be made greater by the judgment of the court than the term of imprisonment in the county jail or in the State prison, for the same offense, would be; but it cannot be said that the punishment inflicted is greater than could be put upon an adult for the same offense. The object of the act is not punishment, but reformation, discipline, and education. While detained for a longer period, perhaps, than he would be if sent to the State prison or the county jail, the conditions surrounding the child are vastly different. He is given the opportunity and instruction to learn a trade and qualify himself for the duties of citizenship, so that at the end of his term he will go out prepared to take care of himself, and those dependent upon him, without the odium which attaches to an ex-convict. There is no doubt of the power of the State to make and enforce provisions for the compulsory education of all children within the State; and it is equally clear that the State may arrest the downward tendency of those who have offended against its laws, and manifested a disposition to follow a criminal career, by placing them in an institution where they will receive the care, education, and discipline necessary to prepare them for honorable citizenship. The records of the penal institutions of this State show that a large

157—23

majority of their inmates are young men—many of them juveniles. The Legislature in its wisdom has endeavored to provide a place for children manifesting criminal traits, where they can be cared for without being thrown under the baneful influence of veterans in crime. We think the policy of the act a wise one, and we see no constitutional ground for declaring it invalid."

In *Ex parte Crouse,* 4 Whart. (Pa.), 11, which was approved in *Roth v. House of Refuge,* 31 Md., 334, and in *Jarrard v. State,* 116 Ind., 98, the Court says: "The House of Refuge is not a prison, but a school. Where reformation, and not punishment, is the end, it may indeed be used as a prison for juvenile convicts who would else be committed to a common gaol; and in respect to these, the constitutionality of the act which incorporated it stands clear of controversy. . . . The object of the charity is reformation, by training its inmates to industry; by imbuing their minds with principles of morality and religion; by furnishing them with means to earn a living, and, above all, by separating them from the corrupting influence of improper associates. To this end, may not the natural parent, when unequal to the task of education, or unworthy of it, be superseded by the *parens patriæ,* or common guardian of the community? It is to be remembered that the public has a paramount interest in the virtue and knowledge of its members, and that, of strict right, the business of education belongs to it. That parents are ordinarily intrusted with it is because it can seldom be put into better hands; but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their privileges, held, as they obviously are, at its sufferance? The right of parental control is a natural, but not an inalienable one. It is not excepted by the declaration of rights out of the subjects of ordinary legislation, and it consequently remains subject to the ordinary legislative power, which, if wantonly or inconveniently used, would soon be constitutionally restricted, but the competency of which, as the Government is constituted, cannot be doubted. As to abridgment of indefeasible rights by confinement of the person, it is no more than what is borne, to a greater or less extent, in every school; and we know of no natural right to exemption from restraints which conduce to

an infant's welfare." There are many others to the same effect. *Ex parte Ferrur,* 103 Ill., 372; *Refuge v. Ryan,* 37 Ohio St., 203; *Farnham v. Pierce,* 141 Mass., 204.

In some of the statutes on this subject provision is made for the detention of the child, when the parent is unworthy, although no charge of crime is preferred, while in others the basis of the order of commitment is a verdict of guilty, and in all the principle on which the authority for legislative interference rests is that the child may be saved and that society may be protected.

It is also usual to require notice to issue to the parent, and to give him an opportunity to be heard; and when this is not done, the parent may have the legality of the detention of the child inquired into, upon a petition for a writ of *habeas corpus.*

Upon the hearing of such petition, he will be required to show that he has applied to the authorities in charge of his child for his release; that he was a fit and proper person to have care of the child at the time of his commitment, and is still such. When it is remembered that if he was an unworthy parent when his child was taken charge of by the State, he had abdicated his parental authority, it is not unreasonable to say to him that the interest of the child and society have become paramount, and that these must be considered in passing upon his application for the custody of the child.

Let us, then, consider the terms of the statute.

The counsel for the petitioner contends that because only persons under the age of 16, who have been *convicted* of a criminal offense, can be admitted to the training school, and that the judicial officer is required to *sentence* such person, are conclusive evidences that the institution is penal and the object punishment.

The word "convicted" is sometimes used to embrace the judgment upon a verdict of guilty, but usually it refers to the verdict itself, and it is in this sense it is used in the statute. *Bugbee v. Boyce,* 68 Vt., 311. That it does not include the judgment is made clear by the fact that after conviction the officer must "sentence."

"Sentence" in its ordinary acceptation refers to a judgment of imprisonment, but it means more than this, and describes any

judgment of a criminal court. *Allen v. Delaware,* 161 Pa., 550; *Wright v. Donaldson,* 158 Pa., 88; *People v. Adams,* 95 Mich., 541; *Com. v. Lockwood,* 109 Mass., 323.

If, therefore, these words stood alone, the contention of the petitioner could be sustained, but imprisonment or a punishment for crime is not necessarily inferred from their use, and when considered in connection with other parts of the statute, it is a reasonable construction that conviction is merely an evidence that the child needs the care and nurture of the State, and that the sentence is an order of detention.

The act (chapter 116a, Pell's Revisal) is entitled "Stonewall Jackson Manual Training and Industrial School," and it is "for the training and moral development of the criminally delinquent children of the State"; the superintendent is "intrusted with the authority for correcting and punishing any inmate thereof to the same extent as a parent may, under the law, impose upon his own child"; the judicial officer is not authorized to commit a child, under 16, because he has been convicted, but only in the event that, after conviction, he "shall be of the opinion that it would be best for such person, and the community in which such person may be convicted, that such person should be so sentenced"; and it is made the duty of the officers in charge of the school to see that the children committed to it are instructed "in such rudimentary branches of useful knowledge as may be suited to their various ages and capacities"; to teach them useful trades and give them manual training, and also to teach "the precepts of the Holy Bible, good moral conduct, how to work, and to be industrious."

These are the obligations of the benign Christian parent, who does not punish or restrain the child except for its good.

We conclude, therefore, that when the act is considered as a whole, detention under its provisions is not imprisonment as a punishment for crime, and that it is constitutional.

If constitutional, the order of detention was authorized, and the courts would not discharge the child because of irregularities in the order or in the commitment. ·

"The writ of *habeas corpus* is not designed to fulfill the functions of an appeal or a writ of error. It is not intended to bring

into review mere errors or irregularities, whether relating to substantive rights or to the law of procedure, committed by a court having jurisdiction over person and subject-matter." 21 Cyc., 285.

In *S. v. Armistead,* 106 N. C., 643, there was an irregular *mittimus,* and in discussing the effect of it the Court says: "The jailer, it may be, would have been authorized to refuse the prisoner until a fuller and more perfect *mittimus* was sent. The defendant certainly, if he chose, could have inquired into the legality of his detention in jail under it, by a writ of *habeas corpus.* The latter course, in this particular instance, would have availed little, however, as the judge, upon production of the justice's judgment, must have remanded the prisoner."

This clearly recognizes the principle that if one is restrained of his liberty under a judgment authorizing his detention, that he will not be discharged upon a petition for a writ of *habeas corpus* because the commitment or *mittimus* is irregular.

The age of the child was a material inquiry upon the hearing, and it was proper for the court to hear evidence upon it.

It is advisable for notice to be given to the parent before an order of detention is made, when this can be done, and for the order to include a finding as to notice and of the age of the child, and that it is made after investigation and because it is for the best interests of the child and of the community in which he is convicted.

We find no error, and the judgment of *Mr. Justice Walker* is
Affirmed.