[No. 12561. Department One. February 5, 1915.]

THE STATE ·OF WASHINGTON, *on the Relation of Harry Syverson, Plaintiff*, v. T. C. FOSTER, *as Sheriff of Lewis County, Respondent.*[1]

BAIL—RIGHT TO—CONSTITUTIONAL LAW—ARREST FOR DEBT — APPEAL. A judgment debtor in a civil action, arrested on a personal execution, who appealed from the order denying his motion to vacate the order of arrest, is entitled to be admitted to bail pending the appeal, where the right to execute the judgment by arrest was questioned under Const., art. 1, § 17, providing that there shall be no imprisonment for debt except in cases of absconding debtors.

SAME — RIGHT TO BAIL — CONSTITUTIONAL PROVISIONS. In such cases, the right to admission to bail pending appeal does not depend on statutory ·provisions, since the right of personal liberty is a natural right, of which the right to habeas corpus is guaranteed by the constitution, as is the right of appeal with all its incidents and privileges.

HABEAS CORPUS—TO ADMIT TO·BAIL—INHERENT POWERS OF COURT. As a writ of habeas corpus is an appropriate remedy in aid of bail, the supreme court has inherent power, sustained by the common law and the bill of rights, to grant a writ of habeas corpus to admit to bail pending appeal from an order to vacate an arrest, upon a disputed right affecting the personal liberty of the petitioner.

Application filed in the supreme court December 28, 1914, for a writ of *habeas corpus* to admit to bail a judgment debtor, held under an order of arrest entered by the superior court of Lewis county, Wright, J., entered September 21, 1914, pending appeal to the supreme court. Writ granted.

*Hayden, Langhorne & Metzger* and *Thacker & Hancock*, for petitioner.

*G. E. Hamaker*, for respondent.

CHADWICK, J.—On the 24th day of October, 1913, a judgment was rendered in the superior court for Lewis county, in favor of one Amy D. Bronson and against Harry Syverson. The action had been brought to recover damages

[1]Reported in 146 Pac. 169.

for an injury to the person of the plaintiff. The judgment remaining unsatisfied, plaintiff filed a petition *ex parte* and obtained from the judge presiding an order directing that an execution issue against the person of the defendant, the present petitioner, commanding the sheriff of Lewis county, or the sheriff of any other county in the state of Washington where the relator might be found, to arrest him and hold him until the judgment was paid or satisfied, or until he should be discharged according to law. Syverson appeared in the superior court, and in the original action, by motion to vacate the order of arrest for the following reasons:

"That the court has no jurisdiction in the matter to issue such order. . . .

"That the showing made on behalf of the plaintiff was insufficient to warrant it being granted.

"That said order is contrary to the laws of the state of Washington, and to article 1, section 17, of the constitution of the state of Washington. . . .

"That the warrant herein issued in this cause be vacated and quashed and the defendant discharged from the custody of the sheriff of Lewis county, Washington, for the following reasons: That the order does not state or fix the amount of any bond, as provided by the statute, to be given on behalf of plaintiff suing out the warrant, . . . and that said order does not fix the amount of bail in which the defendant shall be held, as provided by law."

The motion was brought on regularly for hearing, and was overruled by the court. An order reaffirming the former order of arrest was entered. Petitioner was thereupon recommitted to the custody of the sheriff and is now held by him. A subsequent motion for bail was made and denied by the court. Whereupon the defendant filed a petition praying for a writ of *habeas corpus*. This petition was also denied. Petitioner then filed a petition for a like writ in this court.

It is recited in the brief of the petitioner, and is not denied by respondent, although it does not appear in the transcript, that an appeal was taken from the order of the court deny-

ing the motion of the petitioner to vacate the order of arrest. The prayer of the petition in this court is for an order fixing bail pending a hearing and determination of the appeal.

It is contended by the respondent that, inasmuch as the relator is held for an injury to the person of the party plaintiff (Rem. & Bal. Code, § 749 [P. C. 81 § 309]), and which judgment is subject to execution under Rem. & Bal. Code, § 516 (P. C. 81 § 835), the petitioner is held "under a warrant or judgment of a court of competent jurisdiction," and that the cause of his detention will not be inquired into; that he has no remedy and cannot release himself from the penalties imposed by law in the execution of the judgment pending an appeal unless he gives a supersedeas bond as in a civil action. From the argument of counsel, we understand this to have been the opinion of the trial judge also.

Without going into the merits of the case or inquiring into the right of a party to invoke the aid of the sections of the statute just referred to, we think that, so long as the right of the plaintiff in the original action to execute a judgment by process against the person of the petitioner by imprisonment pending the payment of her judgment is questioned, under § 17, art. 1, of the constitution of the state, it follows, as a matter of course, that bail should be taken. The constitution is sweeping in its terms. It says: "There shall be no imprisonment for debt except in cases of absconding debtors." It will be admitted that a very serious question of law has been raised by the petitioner.

The statute is silent as to the right of bail pending an appeal, where the person of the debtor is held in satisfaction of an execution, and no cases are cited by counsel on either side. They say none can be found, and a hurried search by the writer of this opinion confirms the assurance of counsel, but it does not follow that there is no law to cover the case. A more frequent reference to fundamental principles would make for better law and save much time and energy wasted in reading, approving, discussing, distinguishing, or reject-

ing cases from the great mass of judicial opinions to be found
in the published reports.

"Case law is fast becoming the great bane of the bench
and bar.    Our old-time great thinkers and profound rea-
soners who conspicuously honored and distinguished our
jurisprudence have been succeeded very largely by an in-
dustrious, painstaking, far-searching army of sleuths, of the
type of Sherlock Holmes, hunting some precedent in some
case, confidently assured that if the search be long enough
and far enough some apparently parallel case may be found
to justify even the most absurd and ridiculous contention."
*State v. Rose*, 106 N. E. (Ohio St.) 50.

The right of personal liberty "is a right strictly natural"
of which the right to have a writ of *habeas corpus* to bring
the body of one detained before a court of competent juris-
diction to inquire into the cause and nature of the com-
mitment or detention is a guaranteed remedy.

"Next to personal security, the law of England regards,
asserts, and preserves the personal liberty of individuals.
This personal liberty consists in the power of locomotion, of
changing situation, or moving one's person to whatsoever
place one's own inclination may direct, without imprisonment
or restraint, unless by due course of law.    Concerning which
we may make the same observations as upon the preceding
article, that it is a right strictly natural; that the laws of
England have never abridged it without sufficient cause; and
that, in this kingdom, it cannot ever be abridged at the mere
discretion of the magistrate, without the explicit permission
of the laws.    Here again the language of the great charter
is, that no freeman shall be taken or imprisoned but by the
lawful judgment of his equals, or by the law of the land.
And many subsequent old statutes expressly direct, that
no man shall be taken or imprisoned by suggestion or petition
to the king or his council, unless it be by legal indictment,
or the process of the common law.    By the petition of right,
3 Car. I., it is enacted, that no freeman shall be imprisoned or
detained without cause shown, to which he may make answer
according to law.    By 16, Car. I. c. 10, if any person be
restrained of his liberty by order or decree of any illegal
court, or by command of the king's majesty in person or by

warrant of the council board, or of any of the privy council, he shall, upon demand of his counsel, have a writ of *habeas corpus*, to bring his body before the court of king's bench or common pleas, who shall determine whether the cause of his commitment be just, and thereupon do as to justice shall appertain." 1 Blackstone's Commentaries, 134, 135.

This principle has been carried into our constitutions.

"The privilege of the writ of *habeas corpus* shall not be suspended, unless in cases of rebellion or invasion the public safety may require it." Const., United States, art. 1, § 9; Const., State of Washington, art. 1, § 13.

The writ of *habeas corpus* is an appropriate and proper remedy in aid of bail. But it is contended that petitioner is held under a final judgment and process of a court of competent jurisdiction and that this court will not inquire into the legality of such judgment and process by resort to an extraordinary writ. Rem. & Bal. Code, § 1075 (P. C. 81 § 1699); *In re Newcomb*, 56 Wash. 395, 105 Pac. 1042.

But it does not follow that courts will deny a resort to the writ where it is invoked in aid of bail pending a hearing upon a disputed right affecting the personal liberty of the petitioner. While our constitution, art. 1, § 20, refers in terms to parties charged with crime, we think, nevertheless, that there is an inherent power in the courts, sustained by reference to the doctrines of the common law and the guarantees of the bill of rights, art. 1 of our constitution, to grant bail in all proceedings pending a final hearing and determination of the merit of the controversy. The constitution, art. 1, § 22, guarantees the right of appeal. That guarantee includes every incident and every privilege attending the right. While there seem to be no cases in point, having established the principle, it is not difficult to follow it into the adjudged cases. We will not pursue it further than to refer to the case of *Packenham v. Reed*, 37 Wash. 258, 79 Pac. 786. In that case there was an original application for a writ of *habeas corpus* to admit to bail. The petitioner had

been committed to the reform school of the state of Wash-·ington until he should attain the age of eighteen years, or until he should otherwise be regularly discharged therefrom. Thereafter, he gave notice of appeal. Bail was denied pending the hearing on appeal. The principal contention of the re-spondent, the superintendent of the reform school, was that there was no law or statute authorizing bail pending an ap-peal in such cases. After noting the fact that this court had always given a liberal construction to statutes granting a stay of proceedings on judgments pending appeals, the court said that it had no doubt that an infant has a right of appeal when committed to the reform school, and incidentally a right to be admitted to bail pending such appeal.

"The writ may be had for the purpose of admitting a prisoner to bail in civil and criminal actions." Rem. & Bal. Code, § 1077 (P. C. 81 § 1703).

The court found this section to be declaratory of the com-mon law and that *habeas corpus* is an appropriate remedy under it. In answering the contention that there was no statute authorizing bail, the court said:

"So far as our investigations have led us, we have found no case where jurisdiction to admit to bail by *habeas corpus* has been denied, in the absence of a statute limiting the power of the court in that regard."

If it be said that an infant committed to the state training school is held under criminal process and has a right to be admitted to bail without reference to the statute, under art. 1, § 20, of the constitution, the answer is that the law under which infants are detained and confined in reform schools and houses of correction are not criminal statutes. *Weber v. Doust, post* p. 330, 146 Pac. 623; *In re Powell*, 6 Okl. Cr. 495; *In re Watson*, 157 N. C. 340, 72 S. E. 1049; *Ex parte Ah Peen*, 51 Cal. 280; *Reynolds v. Howe*, 51 Conn. 472; *In re Sharp*, 15 Idaho 120, 96 Pac. 563, 18 L. R. A. (N. S.) 886; *State ex rel. Caillouet v. Marmauget*, 111 La. 225, 35 South. 529; *Mill v. Brown*, 31 Utah 473, 88 Pac. 609,

120 Am. St. 935; *Lindsay v. Lindsay*, 257 Ill. 328, 100 N. E. 892, Ann. Cas. 1914 A. 1222, 45 L. R. A. (N. S.) 908. In principle, the case of *Packenham v. Reed*, above referred to, is broad enough to cover and sustain the right of the relator to demand and have bail fixed in this case.

It was suggested at the time of oral argument that, in the event this court issued the writ, that bail should be fixed in a sum greater than that fixed at the time the order to show cause was issued, to wit, $3,000. That sum seems ample, in the absence of a positive showing that it is probably insufficient to insure the presence of the defendant when his case is finally disposed of on appeal.

The writ will issue.

MORRIS, C. J., PARKER, MOUNT, and HOLCOMB, JJ., concur.