# Court of Appeals.

## *January,* 1886.

## PEOPLE *ex rel.* VAN HECK *v.* NEW YORK CATHOLIC PROTECTORY.

### STATUTES — COMMITMENT TO NEW YORK CATHOLIC PROTECTORY.

When enactments can be received and stand together without conflict the courts will reconcile them and give to such its operative force.

A special and local act is not repealed or modified by a later and general one unless some specific words reveal that intention.[*]

The statutes authorizing commitment of children to the New York Catholic Protectory (*L.* 1863, ch. 448, *Consolidation Act,* § 1618, *et seq.*) are not repealed by the Penal Code.

The effect of the provision of section 291, subdivision 5, of the Penal Code, that a magistrate may commit certain children "to any charitable, reformatory or other institution authorized by law to receive and take charge of minors," is that the magistrate is no longer restricted to the three institutions named in the Consolidation Act, as places to which he can commit children.

But the institution can only take and hold a child for the time, and in the manner and under the regulations prescribed by its fundamental law.

APPEAL by the defendant, the New York Catholic Protectory, from an order of the General Term of the Supreme Court in the first department, of May, 1885, reversing an order of the Special Term which discharged John Van Heck, the child of the relator, from the custody of defendant.

The facts sufficiently appear in the opinion of the court.

*Denis Quin* (*Elbridge T. Gerry,* of counsel), for defendant, appellant.

*F. R. Coudert,* for relator, respondent.

FINCH, J.—A police justice of the city of New York, on the

---

[*] See McKenna *v.* Edmundstone, 91 *N. Y.* 231.

· 5th day of November, 1884, committed John Van Heck, a boy of the age of nine years, to the Catholic Protectory for begging in the streets, in violation, as the commitment asserted, of the Consolidation Act of 1882, of the Penal Code and of the Code of Criminal Procedure.    Under which of these acts the magistrate proceeded he did not at all determine, and we have no means of knowing.    The commitment directed that the child should be and remain under the guardianship of the Protectory "until therefrom discharged in manner prescribed by law."    There is no provision for his discharge, unless the requirements of the · charter of the Protectory, which determine how long he may be held by that institution, are unrepealed and remain applicable to the case.    More than twenty days after this commitment, and on the 23d day of the following December, a writ of *certiorari*, and on the 15th day of January in the next year, a writ of *habeas corpus*, were issued, to inquire into the detention of the child.

The process was awarded upon the petition of the father, who alleged that the act of the child in soliciting alms, if such act did occur, was not due to the petitioner's neglect or misconduct, but that the child had been an attendant at the city schools from the 16th of April, 1884, to the 1st of November, 1884, just five days before he, with his mother, was arrested for beggary.    He further alleged that the child had never been guilty of violating section 290 of the Penal Code as recited in the warrant, and that is admitted, the answer being that section 291 was intended, and the reference to section 290 was a clerical error.    He further alleged that no notice as required by law was given to him, either by personal service or by posting in the station-house. As the mother was arrested with the child, and very probably herself committed, the father was left to miss his son and find · what had happened to him as best he might be able.    And then, upon discovering the facts, he is met by the contention of the Protectory that the commitment is final, and no notice to the father was requisite, and he had no right to be heard upon the question of the disposition of his child; and that is said to result from the effect of section 291 of the Penal Code, which is · claimed to have made unavailing and inapplicable, the wise and

prudent provisions of the charter of the Protectory. That institution is a very worthy and commendable charity, intended primarily for the benefit of Catholic children and to save them from suffering, and throw over them the care and protection of the Catholic church. *Laws of* 1863, chap. 448. The New York Juvenile Asylum is a similar charity, having in its charter corresponding provisions as to notice, and intended primarily for the benefit of Protestant children. If a police magistrate of the city may commit a child of tender years found soliciting alone in the street, without notice to the parents, and giving them an opportunity to be heard, several results may follow. A boy nine years old may have begged in the street without the knowledge of his parents, or any cause or occasion so far as they were concerned, be convicted without the least chance of defense or explanation, be sent to one or the other of these institutions permanently during his minority, and without the least opportunity for redress.

For the construction of the Penal Code which makes the commitment absolute and final, and sweeps out a part of the terms on which the institution can receive and hold the child, must necessarily sweep them all out, and, among the rest, section 1623 of the Consolidation Act which directs the corporation when it shall be made to appear to its satisfaction that the child has been committed " on insufficient cause, false or deficient testimony, or otherwise wrongfully or improvidently committed," to discharge the child. If not, an absolute commitment by the magistrate may be reversed by the Protectory. It may further result that, where the beggary and destitution were real and a commitment proper, the magistrate may ignorantly and innocently, or following the drift of his own denominational convictions, send the child of Catholic parents to be educated and brought up under Protestant influences, or the reverse. Those relating to the Protectory, are found in the Consolidation Act and were substantially copied from the charter of the institution passed in 1863, and subsequent acts amending it. By section 1618 a magistrate of the city may send to the Protectory children between the ages of seven and fourteen found in any

street, or public place, "in circumstances of want and suffering, or abandonment, exposure or neglect, or of beggary," and the form of commitment is described. The child is to be conveyed "to the house of reception established by said corporation, and such child is to be there detained until removed or discharged as afterward provided." Section 1619 commands that "*immediately* upon the making of such order, the magistrate or court making the same shall deliver to a policeman of the city, especially detailed for that purpose, a notice, in writing, addressed to the father of such child, if its father be living and resident within the city, and if not, then to its mother, if she be living and be so resident, and if there be no father or mother of such child resident within the city, then addressed to the lawful guardian of such child, if any, or to the person with whom, according to the examination of the child and the testimony if any, received by such magistrate or court, such child shall reside, in which notice the party to whom the same is addressed shall be informed of the commitment of such child to the house of reception of said corporation, and shall be notified that unless taken therefrom in the manner prescribed by law within twenty days after the service of such notice, the child therein named shall be committed to the asylum of said corporation." Section 1620 provides for the personal service of the notice, and if that has proved impossible, then for a substituted service by posting a notice, the form of which is prescribed, in the police station nearest the alleged residence of the child.

By section 1621, if, within the twenty days, the parent or other person shall prove to the satisfaction of the committing magistrate that the suffering or destitution have not been occasioned by the habitual neglect or misconduct of the parents or guardian, the magistrate is required to order the child to be discharged; but by section 1622 it is directed that in case no such proof is made or nobody appears, the magistrate shall transmit to the superintendent of the Protectory a notice to that effect, whereupon the child shall be removed to the asylum of the corporation. Section 1623 we have already referred to as providing for a discharge by the corporation, not only when satisfied that the commitment was without due cause, but whenever

circumstances after occurring, render it proper or expedient. It is obvious that these provisions relate not to a case of crime, but one of misfortune on the part of the child, and often of the parents. They result in depriving the latter of their children, to whose care and custody they have a natural right, and the injustice of doing so without giving them opportunity to be heard, and to show the real facts, is sedulously avoided. All this wise and careful provision results in a double opportunity of the parent to be heard. During the twenty days he may satisfy the magistrate that the begging was no fault of his, and after the twenty days he may apply to the Protectory. The section of the Penal Code which is said to override and change all this is as follows: After describing the children to whom it applies, as those begging, homeless, orphans, or children of criminals, frequenting the company and dens of thieves and prostitutes, it authorizes the court or magistrate to commit the child to *any* charitable, reformatory or other institution authorized by law to receive and take charge of minors, or to make any disposition of the child such as now is or hereafter may be authorized in the cases of vagrants, truants, paupers or disorderly persons. There is nothing in this section which repeals by implication any of the provisions of the Consolidation Act. It authorizes a commitment. As the General Term suggests, it does not say it shall be absolute, final, unconditional. Most clearly it means that the magistrate, knowing the authority of the different institutions to receive and retain, and the existing limitations upon that authority, may select from among them that which he deems most fitting. The enactments can be read together, and easily stand together without the least clash or conflict, and where that can be done our duty is to reconcile them and give to each its operative force. A further rule of construction points to the same result. The provisions of the Consolidation Act defining the authority of the Protectory are local and special, confined to the city of New York, and having respect to its situation and needs. The provision of the Penal Code is general and applying to the State at large. It is the uniform rule that such a special and local act is not repealed or modified by the later general one, unless some specific words

plainly disclose that intention.    We are bound to apply these
rules, and especially so in a class of cases which involve ques-
tions of personal liberty and parental control.

A construction which stands upon the Penal Code alone and
rejects the influence and modifying effect of the charters is very
clearly shown to be inadmissible by an illustration suggested by
the learned counsel for the respondent.    Under section 1466 of
the Consolidation Act, certain females over fourteen and under
twenty-one may be committed to the Protestant Episcopal
House of Mercy, or the Roman Catholic House of the Good
Shepherd.    These institutions answer the sole description of the
Penal Code as " authorized by law to receive and take charge
of minors," and so, on the construction claimed, this boy might
have been lawfully committed to one of those institutions.    The
same thing would be true as it respects the New York Infant
Asylum, which is authorized to receive children of two years
or under; and as it respects the American Female Guardian
Society, which receives girls under fourteen and boys under ten.
Could a boy over fourteen but under sixteen be committed to
this latter institution by force of the Code ?    Institutions abound
by whose fundamental law they are fitted and adapted to each
of the varying forms of misfortune and vice.    Does the Penal
Code disregard this fitness and adaptation and mean to substi-
tute for it the unlimited discretion of a magistrate ?

The learned counsel for the appellant put stress upon the
alternative provisions of section 291, which permit the magis-
trate to commit the child to a charitable institution, or " make
any disposition of the child such as now is or hereafter may be
authorized in the case of vagrants, truants, paupers or disorderly
persons."    Different classes of children are brought within the
section, and obviously require very different treatment.    These
are, children found begging; those who are homeless; destitute
orphans; children of convicted criminals living with them; and
those frequenting concert and liquor saloons, or associating with
thieves and prostitutes.    If the Penal Code means that a child
who is merely homeless, or a destitute orphan may be punished
as a disorderly person it is extremely harsh and unjust.    But
its meaning is much more sensible.    The section itself provides

that the child must be proceeded against " as a vagrant, disorderly or destitute child," and whichever is selected as the ground of complaint must be supported by the proper and competent proof. The complaint here and its proof was not that the child was disorderly or destitute, but that it was a vagrant.

Under the Revised Statutes a child found begging was classed with vagrants and sent to the county-house or the alms-house till discharged by the superintendent of the poor, and without notice to the parent, as it is said may be done now. 1 *R. S.* 633, § 4; *Code of Crim. Pro.*, §§ 887, 893. But in such case the child passes into the custody of public officers authorized to discharge, and as public officers amenable to authority, and naturally anxious to lessen the public burden at the earliest opportunity. When in such a case a private charity was substituted as the custodian, whose officers are but individuals, and governed by their own charter instead of the public law, it is not to be supposed that restrictions and limitations, prudently and carefully interposed to fit the emergency, were intended to be taken away, and suddenly and without reason deemed unnecessary.

We are impressed with the conviction that the sole effect of the first alternative contained in section 291, is to permit the magistrate who, theretofore, under the Consolidation Act, could commit the destitute child to but one of three specified institutions, to commit such child to any charitable or reformatory institution authorized by law to take charge of minors, but in every case the institution so authorized was left to take and hold the child for the time, and in the manner and under the regulations prescribed by its fundamental law.

The order should be affirmed with costs.

All concur, except EARL, J., not voting, and MILLER, J., absent.

Order affirmed.