### FLORA WARES, PETITIONER.

Suffolk.    December 15, 1893. — March 7, 1894.

Present: ALLEN, HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Habeas Corpus — Commissioners of Public Institutions — Constitutional Law.*

Where the Commissioners of Public Institutions of the City of Boston have, after a full and fair hearing, denied the petition of the mother of a minor child committed to their custody under the provisions of Pub. Sts. c. 48, and Sts. 1882, c. 181, and 1886, c. 330, for its restoration to her, their action, where no error in law or neglect or unfaithfulness in the discharge of their duty is alleged, will not be reviewed on a writ of habeas corpus.

Pub. Sts. c. 48, § 18, St. 1882, c. 181, and St. 1886, c. 330, are constitutional.

PETITION, filed on November 17, 1893, for a writ of habeas corpus to the Commissioners of Public Institutions of the City of Boston.

Hearing before *Lathrop*, J., who, at the request of the petitioner, adjourned the case into the full court, and reported it to that court for its determination on an agreed statement of facts, in substance as follows.

The petitioner is the mother, surviving parent, and duly appointed guardian of Mary Wares, a minor, for whose custody the petition is brought. The child was committed to the custody of the Commissioners of Public Institutions of the City of Boston, by virtue of a mittimus issued by the municipal court of the city of Boston on July 7, 1891, under the provisions of the Pub. Sts. c. 48, and Sts. 1882, c. 181, and 1886, c. 330, during her minority, or until otherwise discharged by due course of law, and the child was placed by them, acting under the authority of the statutes, in a respectable family, where she now is. Prior to the filing of this petition the mother applied to the commissioners for the custody of her child, and, after a full hearing, the application was denied.

*H. T. Richardson*, for the petitioner.

*T. M. Babson*, for the commissioners.

MORTON, J. The question presented in this case is different from that which arose in *Farnham* v. *Pierce*, 141 Mass. 203, or *Kelley, petitioner*, 152 Mass. 432. In the former case it was whether the rights of the father, who had had no opportunity to be heard, were concluded by the findings of the district court, so that he could not be allowed to show that the object of the commitment had been accomplished. In the latter case, it was whether the mere fact, which was set up in the answer of the Board of Lunacy and Charity, that in its judgment the object of the commitment had not been accomplished, deprived the father, without his having been heard upon the matter, of the right to show that the object of the commitment had been accomplished, and that the child should be discharged. In this case the question is whether the mother, who is the surviving parent and the guardian, and whose petition has been heard by the commissioners and denied, as the report states, "after a full hearing of the petitioner and her witnesses," is entitled to have the issues of fact thus passed upon heard anew in this court, and again and again — for that must follow — as often as she shall petition the commissioners and they after a hear-

ing shall deny her suit, or whether, no error of law and no neglect or unfaithfulness on the part of the commissioners being alleged or shown, their action shall be treated as disposing of the matter, on the ground that the petition is addressed to their discretion. It is to be observed, that, though careful provision is made for an appeal from the finding of the court or magistrate before whom the child is brought in the first instance, (St. 1882, c. 181, as amended by St. 1886, c. 330,) there is no provision for an appeal from or a revision of the action of the board or officers having custody of the child, either as to arrangements made by them for its care while in their custody, or upon a petition to them for its discharge. The object of the various statutes is to promote the welfare of the child, and there are strong reasons for holding, in a case where the board having custody of the child has, after full hearing, decided in view of all the circumstances that the child should not be discharged, that such a conclusion should not be reviewable here. It might, and doubtless would, interfere seriously with the success of the boards and officers to whom such children are committed in finding places for them in respectable families, if it were understood that the decisions of the boards or officers as to whether the children should or should not be discharged from custody and restored to their parents were subject to be brought before this court whenever and as often as the parents chose. The right of the parent is to be protected, but the welfare of the child is the paramount consideration. And as between the parent on one side and the child on the other, it may be safely left to the boards and officers to whose custody courts and magistrates are authorized to commit children situated as described in the statutes to decide, after hearing the parties, whether in view of all the circumstances the object of the commitment has been accomplished, and the child should be discharged and restored to its parent. *Mendon* v. *County Commissioners*, 5 Allen, 13. If in any case a board, or the officers having custody of the child, unjustifiably refuse to hear the parent, or proceed in any manner unlawfully, " the rights of the parent," as it is said in *Farnham* v. *Pierce*, 141 Mass. 203, 206, " can be protected on habeas corpus by this court." It is to be presumed that public boards and officers will discharge faithfully and properly the duties intrusted to them.

But it is contended that this case is governed by *Farnham* v. *Pierce*, and *Kelley*, *petitioner*, *ubi supra*, and that according to those cases the petitioner has a right to a hearing in this court. As already pointed out, the questions in those cases were different from that presented by this. In *Farnham* v. *Pierce*, the child, after a summary hearing by the district court, of which the father had no notice, and for notice of which to any one there was no provision as the statutes then stood, was committed to the custody of the overseers of the poor of Taunton. The father applied by a writ of habeas corpus for the discharge of the child, on the ground that St. 1882, c. 181, § 3, under which the commitment was made, was contrary to Article 12 of the Declaration of Rights. The full court sustained the commitment, on the ground that the adjudication of the district court only went so far as to establish that the condition of the child then was such as to justify its commitment to the overseers of the poor, and remitted the case to a single justice in order that the father might show if he could that the object of the commitment had been accomplished. Manifestly the question thus presented was entirely different from that arising here, where the child was committed only after full compliance with the statutes, and after, it is to be presumed, notice to all the parties named in the statutes, and where the petition of the surviving parent for the discharge of the child has been denied after a full hearing by the Commissioners of Public Institutions of the City of Boston, in whose custody the child is, and against whom no erroneous ruling or neglect or unfaithfulness in the discharge of their duties is alleged. Although in that case no question as to the effect of a refusal to discharge a child by the board or officers having custody of it, after a full hearing, was before the court, it is said in the opinion : "He [the father] can apply to the overseers of the poor to discharge the child, for the reason that the object of the commitment has been accomplished, and, on showing his ability and fitness to take charge of the child, she should be discharged by them. The statute leaves that in their discretion, it is true, and, as to matters other than the right of the parent, their discretion may be absolute." (p. 206.)

In the case of *Kelley*, *petitioner*, 152 Mass. 432, the Board of Lunacy and Charity refused to hear the father on the question

whether the object of the commitment had been accomplished and the child should be discharged. The board alleged in its answer that in its judgment the object of the commitment had not been accomplished, and took the ground that that without anything more was conclusive. A majority of the court was of opinion that the father was entitled to be heard, and, the board having refused to hear him, the case was sent to a single justice of this court for hearing. The question whether the father would have been entitled to a hearing in this court if he had been heard fully by the board was not involved in the case, and was not considered, though it was said that, if the petition was defective in not alleging that he had offered to show to the board facts that were sufficient to show that the object of the commitment had been accomplished, the defect was supplied by the answer of the defendants.

In each of these cases the right of the parent to be heard was properly deemed, on the facts presented, to turn on the question whether the adjudication of the district court had operated as a forfeiture of the parent's rights during the time for which the child was committed, and that was the question principally discussed. And it was held in both cases — in the former by the full court and in the latter by a majority — that the adjudication did not forfeit his rights as parent. But it may well be that, though his rights as parent are not forfeited by the adjudication, he should be concluded by the decision of the board or officers having custody of his child, and having the power of discharge, if after a full and fair hearing it is decided that the object of the commitment has not been accomplished, and the child ought not to be discharged. His rights as parent are protected, first, by the presumption that the board or officers having custody of the child will do their duty faithfully and without interest or bias, and, secondly, by the liberty which he has to apply to this court by habeas corpus for the discharge of the child in case his rights are prejudiced by errors in law or wrongful conduct on their part.

We discover nothing unconstitutional in the statutes relating to this matter. Especial care is taken to see that the child should not be improperly committed. Notice of the hearing is to be given to the father, if living and resident in the State, if

not then to the mother, and if she is not then to the legal guardian if there is one, and if not then to the person with whom the child resides, and if there is no such person a guardian *ad litem* is to be appointed, and notice is to be given to the State Board of Lunacy and Charity. The child and all these persons are given a right of appeal to the Superior Court from the decisions of the court or magistrate before whom the child is brought. The rights of the parent and of the child are thus fully protected. The discretionary power given to the board or officers to whose custody the child may be committed, to discharge it before the end of the term if the object of the commitment has been accomplished, is to the advantage rather than disadvantage of the parent, and we see no valid objection to bestowing it upon such board or officers. Equally important discretionary powers vested in other boards have been upheld, and similar powers exercised by the trustees of the State industrial and reform schools have never, so far as we are aware, been questioned. *Salem* v. *Eastern Railroad,* 98 Mass. 431. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523. Pub. Sts. c. 89, § 45. *Petition dismissed.*