PEOPLE ex rel. HORTON v. FULLER.

(Supreme Court, Appellate Division, Second Department. June 13, 1899.)

1. PAUPER CHILDREN—COMMITMENT TO CHARITABLE INSTITUTIONS.

　　Laws 1875, c. 173, § 1, relating to the care of pauper and destitute children, provided that a child between 3 and 16 should not be judicially committed as vagrant, truant, and disorderly to any county poor house, but committed to some orphan asylum or other charitable or reformatory institution, and required the overseers of the poor to send any pauper child, except a certain class, to the institutions last enumer-

ated. Section 2 charged officers caring for indigent persons to remove
pauper children from the county poor houses when they reach the age
of 3, and place them in the care of families, orphan asylums, or other
appropriate institutions. *Held* not to contemplate that a child, merely
a pauper, and not within the excepted class referred to in section 1,
should be judicially committed, when removed to an orphan asylum or
other place prescribed by the act.

2. REPUGNANT STATUTES—WHICH PREVAILS.

Where statutes are repugnant, the one last enacted prevails.

3. PAUPER CHILDREN—COMMITMENT TO CHARITABLE INSTITUTIONS BY OVER-
SEERS OF POOR.

Pen. Code, §§ 291, 292, providing for the arrest, and judicial commit-
ment by magistrates to charitable and reformatory institutions, of chil-
dren enumerated therein, does not destroy the authority of overseers of
the poor under Laws 1896, c. 225, subsequently enacted, to commit pau-
per children to the same institutions without a judicial proceeding, con-
ceding that those sections of the Code are broad enough to confer juris-
diction on a magistrate to commit a child of the class referred to.

4. SAME—CUSTODY OF CHILD—HOW DETERMINED.

In determining the custody of a child as between the public and pri-
vate persons its welfare is the governing consideration.

Appeal from supreme court, special term.

Application for writs of habeas corpus by the people, on the rela-
tion of Frederick C. Horton, against Ellen T. Fuller. From an order
dismissing the writs, relator appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Charles Morschauser, for appellant.
Abram J. Miller, for respondent.

HATCH, J. The evidence is convincing of the fact that the father
of the two children, the subjects of the writs of habeas corpus in
this proceeding, had abandoned them, and left them solely to the
care of their mother. It is equally convincing of the fact that the
mother was living in adulterous intercourse with another man, and
gave to the children little or no care and attention. It is evident
that the mother and her paramour were wretchedly poor, and that
the children, in the dead of a severe winter, were destitute of food,
clothing, and care. Under such circumstances the overseer of the
poor of the town, after full investigation, reached the conclusion
that they were in every sense pauper and destitute children, and
applied to the supervisor of the town, who also, after investigation,
determined that they were pauper and destitute children, and there-
upon committed them as such to the Albany Orphan Asylum, where
they have since remained. The children were above the age of 3
and under the age of 16 years. It is presently claimed that the
proceeding by which these children were committed to this asylum
was not judicial, and that the pretended commitment was illegal
and void. The commitments were made by the supervisor of the
town, and, as recited therein, were made pursuant to the provisions
of chapter 173 of the Laws of 1875 and of the various other acts
since passed relating to the same subject. The act of 1875 is enti-
tled "An act to provide for the better care of pauper and destitute
children." Section 1 of the act prohibited a justice of the peace,

police justice, or other magistrate from committing any child over 3 and under 16 years of age as vagrant, truant, or disorderly, to any county poor house, and required that such child should be committed to some orphan asylum, or other charitable or reformatory institution. The section also required the county superintendent or overseer of the poor or other officer to send any pauper child, except a certain class, into which these children did not fall, to such institutions as are before enumerated. The second section required county superintendents of the poor, or other proper officers, charged with the care of indigent persons, to remove pauper children from the county poor houses after they shall have arrived at the age of 3 years, and place them in the care of families, orphan asylums, or other appropriate institutions. The boards of supervisors of the several counties were required to take such action as should be necessary to carry out the provisions of the act. Pursuant to this law, the board of supervisors of the county of Putnam, in which is the town of Southeast, from which place the children were committed, entered into a contract with the Albany Orphan Asylum for the care of the pauper children of the county falling within its provisions, and also passed a resolution authorizing the supervisor of the town to make the orders committing such children to such institution, and directed that they be conveyed to such place by the overseers of the poor of the town. Neither the contract nor resolution appears in the printed papers, but the fact that both were made does not appear to be disputed by the appellant. It is quite evident from the provisions of the act that a judicial proceeding was not contemplated. The children authorized to be committed by the overseers of the poor or other persons charged with such duty were not, either in fact or law, criminals, or guilty of any criminal act or offense; they were simply destitute and pauper. The act in terms provided for vagrant, truant, or disorderly children, and assumed that as to such children magistrates would commit under form of judicial procedure. As to the other class, not being in any sense criminal or guilty of offense, no such form was required. It was never the law that pauper children solely required commitment by a magistrate when taken to a county poor house. They were so taken to such institutions by the authorities of the county or town, without the intervention of a judicial officer. The act itself recognized that such children were, at the time of its passage, in the several alms houses of the state, and it directed their removal by the poor authorities, and it is clear that judicial authority was not to be invoked in effecting such removal. As to pauper children not inmates of such houses, authority for their care was committed to the supervisors and the poor authorities of the county or town.

We have, therefore, two classes of children recognized by the act,—one class in a sense criminal, which magistrates were required to commit; and the other pauper and destitute, for which the supervisors and poor authorities were required to care. The act which we have reviewed was repealed by the poor law (Laws 1896, c. 225), but therein, so far as authority was vested in the poor authorities of the county, town, and boards of supervisors, the law is in all essen-

tial respects re-enacted in section 56 of such law. It is therefore evident that authority of law existed for the commitment of these children to this asylum, and the form and manner of their commitment have the support of statutory authority. It is claimed, however, that these laws are repealed and superseded by sections 291 and 292 of the Penal Code. We think that this contention cannot be upheld. The re-enactment of the law of 1875 by the Laws of 1896 was subsequent to the adoption of these sections of the Code and of any amendment made thereto. If either statute, therefore, is to yield, it must be the former and not the latter; and this would be so even though the two were not wholly repugnant, and even though there be no repealing clause. Heckmann v. Pinkney, 81 N. Y. 211; People v. Gold & Stock Tel. Co., 98 N. Y. 67, 78. But we do not think that either statute is required to yield to the other. Repeal of statutes by implication is not favored, and these two statutes are not repugnant. The provisions of the Penal Code evidently refer to a class of children in some sense guilty of criminal acts, and against whom the law requires the proceeding therein provided. The later act does not contemplate such steps, as the child does not fall within the class. The two statutes may therefore easily stand. In re Riley, 31 Hun, 612; People v. New York Catholic Protectory, 101 N. Y. 195, 4 N. E. 177. It is quite likely that the terms of section 291 are broad enough to confer jurisdiction upon a magistrate to commit a child of the latter class, but, even though this be the fact, it cannot operate to destroy the authority of the later act. For reasons already assigned, chapter 438, Laws 1884, cannot be held to operate in derogation of the statute of 1896. The act of 1884 contemplates commitment of children upon consent of parents, and under different circumstances. It is not necessary that we review such act, for, even though we should find some of its provisions in conflict with the present statute, we should be bound to adopt the provisions of the later act. Aside, however, from these provisions, it is quite evident that the court is required to look to the welfare of these children. The statute contemplates a condition of necessity existing upon the part of the public to care for the child, that its welfare may be promoted, and its interest protected. Under such circumstances the public becomes its guardian, and, as it is not criminal, its welfare as to custody ought to be a controlling consideration. As between private persons seeking the custody of a child, this is the governing consideration. People v. Wilcox, 22 Barb. 178; People v. Weissenbach, 60 N. Y. 385. The same reasons exist in the case now before us as induced the court to enunciate such doctrine, and, if such rule be applied, the court was clearly right in determining that the best interests of the children required their continuance in the asylum, rather than to award them to the custody of their father.

In any view of the case, the orders should be affirmed. All concur.