[No. 11382. Department One. September 22, 1914.]

ELIZABETH WEBER, *Respondent*, v. WILLIAM DOUST *et al.*,
*Appellants*.[1]

CONSTITUTIONAL LAW—DUE PROCESS—DELINQUENT CHILDREN—UNLAWFUL DETENTION—LIABILITY OF OFFICERS. Officers who took into custody and detained a minor suspected of being a delinquent, before an attempt was made to comply with the provisions of Rem. & Bal. Code, § 1991, providing for the bringing of delinquent or neglected children before the juvenile court by first filing an information or complaint and the issuance of a summons, are liable in an action for false imprisonment, the detention being a violation of Const., art. 1, § 3, prohibiting the deprivation of liberty without due process of law.

FALSE IMPRISONMENT—ACTIONS—EVIDENCE. In an action for false imprisonment, the exclusion of evidence offered to show the details of an investigation relative to .the death of plaintiff's sister was proper, where the court ruled that it would admit any evidence tending to show honest belief of defendants that they had the right to arrest plaintiff, or were advised by an officer to do so, and gave wide latitude in admitting any evidence which would show reasons or motive on the part of defendants in taking into custody and detaining plaintiff.

MUNICIPAL CORPORATIONS—OFFICERS—BONDS—LIABILITY OF SURETY. Sureties upon the official bonds of police officers are liable for the unlawful arrest of a minor, where the officers, acting in their official capacity, attempted to perform an official act in the line of their official duties, but in excess of their authority.

CHADWICK, J., dissents.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered May 12, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for false imprisonment. Affirmed.

*H. M. Stephens* and *W. E. Richardson*, for appellants.

*Geo. W. Shaefer*, for respondent.

MAIN, J.—The purpose of this action was to recover damages alleged to be due on account of false imprisonment.

[1]Reported in 143 Pac. 148.

The cause was tried to the court sitting with a jury. A verdict was returned in favor of the plaintiff in the sum of $1,250, upon which a judgment was entered. The defendants have appealed.

The facts, so far as necessary to an understanding of the questions which are decisive of the action, are substantially as follows: The defendants against whom the judgment was entered were William J. Doust, chief of police of the city of Spokane; the American Bonding Company, as surety upon his official bond; Paul L. Buchholz and Cecil T. Thompson, police officers of the city of Spokane.

During the month of December, 1911, and for sometime prior thereto, the plaintiff and the other members of her family lived on a low flat in the bend of the Spokane river, in the western part of the city of Spokane. In order to go to other parts of the city or elsewhere, the members of this family either had to follow a path to the top of a considerable hill, or go by way of a wagon road which detoured somewhat. Near the top of the hill, the path and the road intersected. At this time, the Weber family consisted of the father, mother, one son, and two daughters, Anna and Elizabeth. On the morning of December 8th, 1911, the dead body of Anna was found; it lay across the path leading from the Weber home to the top of the hill. Some time during the previous night she had been murdered. Members of the family were suspected of knowing more about the matter than they were telling. The plaintiff, on or about the 10th of the same month, went to the office of the chief of police, where she was interrogated by the officers in charge, relative to the various members of her family and their relations to the deceased. The investigation of the police officers continued, and they talked with other members of the family, and further with the plaintiff.

The plaintiff was employed in the telephone office. On the afternoon of December 26, 1911, when she left her work about 4:30 o'clock p. m., she met, upon the street near the

building, police officers Buchholz and Thompson, who apparently had been waiting across the street until her work for the day was over. Officer Buchholz said to her that there was a lady on the north side who wanted to see her about the sister. The plaintiff then accompanied the two officers, and she was taken to the juvenile detention rooms, across the street from the Spokane county court house, and placed in the custody of Mrs. Rihard, a juvenile probation officer appointed by the judge of the juvenile court. She was there detained for a period of forty-eight hours, and was interrogated by Mrs. Rihard relative to her home conditions and the facts and circumstances surrounding the murder of her sister. There is no claim that the officers or Mrs. Rihard treated the plaintiff in any other than a kindly manner. The reason given by the officers for taking into custody and detaining the plaintiff was that her home conditions made it an unsuitable place for her, and if she were permitted to remain there, would contribute to her delinquency. At this time no complaint had been filed charging the plaintiff with being a juvenile delinquent. On the following morning, it appears that a complaint in some form was prepared and filed in the juvenile court, but the plaintiff was never brought before the court. After she had been in custody at the juvenile detention station for the period mentioned, on the advice of the prosecuting attorney, she was discharged and returned to her home. On June 8, 1912, the complaint in the present action was filed. The trial court instructed that the appellants were liable, and submitted to the jury the question of the amount of damages.

The paramount question here for determination is whether a child, thought to be a juvenile delinquent, may be taken into custody against his or her will and detained without a complaint being filed and the procedure followed as outlined in the law relative to delinquent children and juvenile courts.

Article 1, § 3, of the state constitution provides:

"No person shall be deprived of life, liberty, or property without due process of law."

Rem. & Bal. Code, § 1987 (P. C. 69 § 11), defines who is to be considered a delinquent or neglected child. Section 1991 (P. C. 69 § 19), provides the procedure which shall be followed for the bringing of such a child before the juvenile court, and is as follows:

"Upon the filing of an information or the complaint the clerk of the court shall issue a summons requiring the person having custody or control of the child, or with whom the child may be, to appear with the child at a place and time stated in the summons, which time shall not be less than twenty-four hours after service. The parents of the child, if living, and their residence is known, or its legal guardian, if there be one, or if there is neither parent nor guardian, or if his or her residence is not known, then some relative, if there be one, and his residence is known, shall be notified of the proceedings; and in any case the judge shall appoint some suitable person or association to act in behalf of the child. If the person summoned, as herein provided, shall fail without reasonable cause to appear and abide the order of the court, or to bring the child, he shall be proceeded against as for contempt of court. In case the summons cannot be served, or the parties served fail to obey the same, and in any case when it shall be made to appear to the court that said summons will be ineffectual a warrant may issue on the order of the court, either against the parent or guardian, or the person having custody of the child, or with whom the child may be, or against the child itself. On return of the summons or other process, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case in a summary manner. Pending the final disposition of the case, the child may be retained in the possession of the person having charge of the same, or may be kept in some suitable place provided by the city or county authorities, or by any association having for one of its objects the care of delinquent and neglected children."

The section of the constitution quoted provides that no person shall be deprived of liberty "without due process of

law." The legislature, in the section of the statute set out, defined what would constitute due process of law for the purpose of taking into custody by the proper officers a delinquent or neglected child. From this section of the statute it will be observed that the procedure outlined for the bringing of a delinquent child before the juvenile court is the filing of an information or complaint, and the issuing of a summons requiring the person having the custody and control of the child to appear with such child at the place stated in the summons. It is also therein provided that, in case it shall be made to appear to the court that the summons will be ineffectual, a warrant may issue upon the order of the court, either against the parent or the person having the custody of the child, or against the child itself.

In the present case, the respondent was taken into custody and detained without any attempt to comply with the statute. It seems very plain that a person who is claimed to be a juvenile delinquent cannot be taken into custody against his will and deprived of his liberty without any attempt to follow the statutory procedure, and entirely disregarding the constitutional requirement prohibiting the deprivation of liberty without due process of law. But it is argued in the brief of appellants that the procedure in the case of juvenile delinquents is equitable or civil, and not criminal. This position is supported by the authorities, and may be admitted without further discussion. It may also be admitted that a juvenile delinquent is not a criminal, but is a ward of the state, and the purpose of the legislation dealing with such children is not penal, but reformatory. Granting all this, it yet would not authorize or justify the depriving a delinquent child of its liberty without due process of law. As already stated in this case, the due process of law, as defined by the statute, was not followed. Neither was there any attempt to conform thereto. Whether the legislature has the power to authorize an officer or other proper person to detain a child without other formality

than that such officer or other person has a suspicion or reasonable ground for belief that such child is a delinquent or neglected, is a question not now before us, as the procedure has not been thus defined.

The appellants sought to show upon the trial the details of the investigation which was made relative to the death of Anna Weber. This was excluded by the trial court. But the court expressly ruled that it would admit any evidence tending to show the honest belief of the appellants that they had the right to make the arrest, or that they were advised by any officer to do so, and the attendant circumstances. The court, in applying the ruling, gave reasonably wide latitude in admitting any evidence which would throw light upon the reasons or motive of the appellants in taking into custody and detaining respondent. The ruling of the court was plainly right.

The appellants also claim that the surety is not liable in any event. This contention cannot be sustained. The complaint alleges, and the evidence shows, that all the appellants, in what they did relative to the taking into custody and detaining the respondent, acted in their official capacities, and were attempting to perform an official act in the general line of their respective official duties, but that they acted in excess of their authority. *Gomez v. Scanlan,* 155 Cal. 528, 102 Pac. 12; *Landrum v. Wells,* 7 Tex. Civ. App. 625, 26 S. W. 1001. In the case last cited, it is said:

"The averment in the petition that, in making the arrest he was acting under color of his office, is not the equivalent of an allegation charging him with acting in an official capacity as constable in making the arrest. The most serious objection to this allegation is that it simply states the conclusion of the pleader. It should state the authority by which Landrum was acting, so that the court, in construing the pleadings, may determine that a cause of action is stated against the sureties."

The judgment will be affirmed.

ELLIS and GOSE, JJ., concur.

CHADWICK, J. (dissenting)—The record reveals this state of facts: the individual defendants ascertained, while investigating an independent crime, that there was reason to believe that plaintiff was living under unwholesome moral conditions; that the murdered sister had for a long time sustained illicit sexual relations with her father and her brother. These facts were communicated to the prosecuting attorney, and he advised the detention of the plaintiff under the juvenile delinquent law. These facts were set up by the defendants in their answer. No complaint had been filed at the time plaintiff was detained, nor was one filed for at least a day thereafter. Further investigation warranted the prosecuting attorney in directing the discharge of the plaintiff without a formal hearing. The case has proceeded upon the theory that no person shall be held without due process of law, or be subject to restraint under the statute without a complaint filed and warrant issued.

It is my judgment that the juvenile probation act should not be regarded as a criminal statute. If it is so regarded, great injustice will come to those it was designed to serve and protect, and an unreasonable jeopardy will be put upon the administrative officers of the law. The purpose of the act is humane and equitable. It sounds in charity and benevolence. It is provided:

"This act shall be liberally construed to the end that its purpose may be carried out, to wit: That the care, custody and discipline of a child shall approximate as nearly as may be that which should be provided by its parents, and that as far as practicable any neglected or delinquent child shall be treated not as a criminal, but as misdirected and misguided, and needing aid, encouragement, help and assistance." Rem. & Bal. Code, § 2001 (P. C. 69 § 37).

This being so, it should not be held that an officer, in the conscientious discharge of his duty, cannot detain for a reasonable time a juvenile who is suspected of incorrigibility or delinquency. The whole purpose of the law is to lead the

child from evil ways and to shield him from the aspersions of public opinion; to remove him from improper environment; to prevent in after years the handicaps that attend notoriety or the knowledge that he has been charged with an offense against the law. The statute, if it is to be of any service to the public, demands that a child shall be protected, and as little publicity be given its offenses as possible. The spirit of the act is spoken in its every line, and if it is to follow that a child cannot be detained in any case without an information or complaint first being filed, it reveals a most glaring omission of the law, for how can a child be protected if the law demands that it be·published to the world as a delinquent or an incorrigible? I think the section quoted by the majority should receive a more reasonable and a broader interpretation. It would be proper to say that no child shall be *committed* without a complaint and warrant. Section 2001 goes no further than this. It is silent as to detention pending an investigation. It will defeat the law entirely to say that a child cannot be detained for a time under proper, wholesome and helpful surroundings, such as were afforded in this case, and innocent and unoffending children, and those who are simply mischievous, will be submitted to the stigma which attaches to criminal suspects.

The majority has, in my judgment, failed to comprehend the true spirit of this special statute. The legislature has not only charged us with the duty of giving the act the broadest and most humane construction, but it has declared all delinquent and neglected children wards of the state and subject to the custody, care, guardianship and control of the court. It has provided for the appointment of probation officers, and has empowered them to make investigations and to take charge of the child before and after trial, as may be directed by the court. It has provided that no child under the age of fourteen years shall be confined in any · jail, lock-up, or police station, and that they shall not come in contact with adult criminals; it has provided that all

counties of the first and second class shall provide detention rooms or houses of detention, to be overseen by matrons of good character.

In the case of *Lovell v. House of The Good Shepherd,* 14 Wash. 211, 44 Pac. 253, this court sensed the true spirit of the law when it denied a recovery in a case where the child had been detained by the House of The Good Shepherd and was thereafter released under habeas corpus proceedings. Juvenile delinquency laws have been considered by many courts, and they have never, so far as we are informed, been treated as criminal statutes. In *Mill v. Brown,* 31 Utah 473, 88 Pac. 609, the court found, after a review of many authorities, that, considering the purpose of the law, there could be no constitutional question raised against it. If this is so, the premise of the majority, that is, that "no person shall be deprived of life, liberty or property without due process of law," is a false premise. Indeed, that constitutional provision can only apply in the event that we treat the juvenile law as a criminal statute. The following cases hold that juvenile laws are not criminal statutes, and some of them that a detention under them is not an arrest or imprisonment in violation of the due process clause of the constitution: *In re Powell,* 6 Okl. Crim. 495, 120 Pac. 1022; *In re Watson,* 157 N. C. 340, 72 S. E. 1049; *Ex Parte Ah Peen,* 51 Cal. 280; *Reynolds v. Howe,* 51 Conn. 472; *In re Sharp,* 15 Idaho 120, 96 Pac. 563; *State ex rel. Caillouet v. Marmouget,* 111 La. 225, 35 South. 529; *Mill v. Brown,* 31 Utah 473, 88 Pac. 609, 120 Am. St. 935; *Lindsay v. Lindsay,* 257 Ill. 328, 100 N. E. 892, Ann. Cas. 1914 A. 1222, 45 L. R. A. (N. S.) 908.

The theory of these cases, and as all cases which appreciate and meet the full intendment of the law must be, is that the state stands in *parens patriae* to the child, and that its officers—for the state has no other way of acting—shall not be held to a criminal accountability, or to answer

in damages sounding in tort, for a mistake of judgment in the administration of the law.

The defendants asked instructions upon the theory that the act was equitable and remedial and that an exercise of authority under it, in good faith, would excuse the officers. These were refused by the court. It is my judgment that they should have been given, and that a new trial should be had in any event. But admitting that the plaintiff is entitled to recover a verdict at all, I think that she should be allowed no more than a nominal sum. The court is unwilling to reduce the verdict in this case, because no error is assigned in this court on the refusal of the trial judge to either set aside the verdict or pass upon the motion for a new trial on the ground of excessive damages.

I have found no cases holding that the court can, of its own motion, reduce a verdict to a nominal sum where there has been not only no purpose to violate the law, but, on the contrary, the ones charged have proceeded in utmost good faith to serve the law, and I can only say, as I have said once before, that if there is no authority, it is high time that there should be. The law has to start somewhere, and I regard this as a rare opportunity to lay down a simple rule that will offend against no statute and do no violence to the public conscience, that where a public officer, without warrant, detains a child suspected of delinquency, but has done so in good faith, with no purpose other than to serve the ends of justice, and where the detention has not been for an unreasonable time, he shall not be held for other than nominal damages. The law being declared by the majority to be otherwise, it should be amended at the coming session of the legislature.

Crow, C. J., concurs with Chadwick, J.