[No. 11382.    *En Banc.*    March 9, 1915.]

ELIZABETH WEBER, *Respondent,* v. WILLIAM DOUST *et al.,
Appellants.*[1]

CONSTITUTIONAL LAW—LIBERTY—DUE PROCESS—FALSE IMPRISONMENT—DELINQUENT CHILDREN—UNLAWFUL DETENTION—LIABILITY OF OFFICERS. The purpose of the juvenile delinquency act being protection, and not punishment, an officer arresting and detaining a person thought to be a delinquent child, without any complaint being filed or summons issued therefor as required by the act (Rem. & Bal. Code, § 1991), is not guilty of false imprisonment, as a matter of law, in that the restraint was without due process of law; but whether the officer acted wrongfully to serve a purpose inconsistent with the purposes of the act would be a question for the jury under proper instructions; in view of the duty of the state to act as *parens patriae,* and the common law powers of courts of chancery in aid of the statute for the exercise of the state's guardianship over infants (overruling on rehearing Id., 81 Wash. 668).

INFANTS—GUARDIANSHIP—POWERS OF STATE. The right of the state to exercise guardianship over a child does not depend upon statute.

FALSE IMPRISONMENT—DELINQUENT CHILDREN—PARENT AND CHILD. Detention of delinquent children, in the nature of parental restraint, is not imprisonment under a criminal statute, and no constitutional right is violated thereby.

FALSE IMPRISONMENT — ARREST WITHOUT PROCESS — DELINQUENT CHILD. An officer detaining a delinquent child without complying with the juvenile delinquency act is not liable for false imprisonment if he acts in good faith, in furtherance of the law and for the welfare of the child; but he acts at his peril if he abuses his authority, and is a trespasser *ab initio* and liable for false imprisonment if he did not act in good faith in furtherance of the law, or if actuated by ulterior purposes.

PARKER, ELLIS, and MAIN, JJ., dissent.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered May 12, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for false imprisonment.    Reversed.

[1]Reported in 146 Pac. 623.

*H. M. Stephens* and *Wm. E. Richardson,* for appellants.

*Geo. W. Shaefer,* for respondent.

ON REHEARING.

CHADWICK, J.—This case was before the court and decided in favor of the respondent by a divided department, 81 Wash. 668, 143 Pac. 148. A rehearing has been had, and a majority of the judges are of the opinion that there is merit in the opinion of the majority and in that of the minority; that both declare a true rule when properly applied, and although it be held that restraint without a warrant may be a false imprisonment and that a party so held may be entitled to set up that he is restrained without due process of law, yet the juvenile delinquent act must be given its place in the statute law of the state, and that a mere restraint by an officer of the law without warrant cannot be held to be a false imprisonment as a matter of law.

Without repeating what was said in the dissenting opinion with reference to the objects and purposes of the juvenile act and the rule of construction there prescribed by the legislature itself, it is not out of place to say that this court has, in at least three recent cases, held that the act "is not punitive in its nature or purpose."

"The policy underlying this law is protection, not punishment. Its purpose is not to restrain criminals to the end that society may be protected and the criminal perchance reformed; it is to prevent the making of criminals." *In re Lundy,* 82 Wash. 148, 143 Pac. 885; *Viereck v. Sullivan,* 77 Wash. 313, 137 Pac. 456; *State ex rel. Syverson v. Foster,* ante p. 58, 146 Pac. 169.

It seems to be incumbent, therefore, upon this court to mark a line of cleavage between the law of false imprisonment and a restraint under the juvenile act. Appellants sought to mark this line by requested instructions, but the court below took the position, and consistently held to it and so instructed the jury, that there had been a false imprisonment as a matter of law.

We think the true rule is that, where an officer proceeds in good faith and in the execution of the duties put upon him by the spirit or letter of the juvenile act, a false imprison-ment does not result as a matter of law. Whether there has been an outrage of the rights of the restrained one should be made to depend upon the will and purpose, the motive, of the one who restrains him. If the officer proceeds in good faith, imposing no hardship other than a detention under proper and wholesome surroundings, and for the purpose of protection or inquiry, he should not be held liable in damages. Cases might be readily conceived where it would be the legal, as well as the moral, duty of any man, whether he be an officer or not, to take a child and restrain it for its own protection pending a legal inquiry and investigation of its needs and surroundings. On the other hand, if an officer should pro-ceed defiantly and under circumstances indicating a willful purpose to arrest and detain without just cause, or to serve a purpose inconsistent with the objects of the juvenile act, he should be held liable. Whether the due process clause of the constitution or the juvenile act is controlling depends upon the facts of the given case, to be considered by the jury under proper instructions from the court.

"It is familiar that what is due process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation." *Moyer v. Peabody,* 212 U. S. 78.

See, also, *Ex parte Wall,* 107 U. S. 265.

A false imprisonment implies a battery or an unlawful force, although the restraint may be no more than an over-coming of the will. It is a wrongful restraint that is pun-ishable or for which a recovery in damages may be had. It is not every restraint that is unlawful.

"In certain relations a degree of restraint is permitted by the law, for which no writ or legal process of any sort is usually required. The following are the cases referred to: The parent in respect to the child, the guardian in respect to the ward, the master in respect to his apprentice, the teacher

in respect to his pupil, and the bail in respect to his princi-pal. . . .

"Restraints are admissible within such limits as the parent, guardian, teacher, or master, in the exercise of a sound dis-cretion, may decide to be necessary. To a certain extent a judicial power is vested in him which others are not at liberty to interfere with, except in a case of manifest abuse." 1 Cooley, Torts (3d ed.), p. 299.

Upon the abolition of the court of wards in England, the care of infants fell to the King and was exercised through the court of chancery, as will be seen by reference to the authorities hereinafter cited. The care and protection of in-fants was a prerogative of the crown. 3 Blackstone, Com-mentaries, 427.

"When this country achieved its independence, the prerog-atives of the crown devolved upon the people of the states. And this power still remains with them except so far as they have delegated a portion of it to the Federal government. The sovereign will is made known to us by legislative enact-ment. The state, as a sovereign, is the *parens patriae.*" *Fontain v. Ravenel,* 17 How. 369, 384.

"This prerogative of *parens patriae* is inherent in the su-preme power of every state, whether that power is lodged in a royal person or in the legislature, and has no affinity to those arbitrary powers which are sometimes exerted by irre-sponsible monarchs to the great detriment of the people and the destruction of their liberties. On the contrary, it is a most beneficent function, and often necessary to be exercised in the interests of humanity, and for the prevention of injury to those who cannot protect themselves. Lord Chancellor Somers, in *Cary v. Bertie,* 2 Vernon, 333, 342, said: 'It is true infants are always favored. In this court there are sev-eral things which belong to the King as *pater patriae* and fall under the care and direction of this court, as charities, infants, idiots, lunatics, etc.' " *Romney v. United States,* 136 U. S. 1.

The right of the state to exercise guardianship over a child does not depend on a statute asserting that power. Such statutes are only declaratory of the power already and

always possessed by courts of chancery, and they will even now exercise that power concurrently or in aid of a statute. *In re Sall*, 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885; *Johnson v. McNabb*, 7 Ind. App. 393, 34 N. E. 667.

Summary restraints and detentions have been generally sustained where they have occurred under an exercise of the sovereign or police power of the state, for as was said in *Barbier v. Connolly*, 113 U. S. 27:

"But neither the amendment [14th amendment]—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people."

See, also, *Hutchinson v. Valdosta*, 227 U. S. 303.

It has been accordingly held that detention in the nature of parental restraint is not in any proper sense an imprisonment under· a criminal statute. Wherever the question has been raised it has been held that such acts do no violence to the provisions of the constitution, state and national, guaranteeing a trial by jury and that no one shall be restrained of his liberty without due process of law. McGehee, Due Process of Law, 344; *Reynolds v. Howe*, 51 Conn. 472-8; *In re Kol*, 10 N. D. 493, 88 N. W. 273; *House of Refuge v. Ryan*, 37 Ohio 197; *Prescott v. State*, 19 Ohio St. 184; *County of McLean v. Humphreys*, 104 Ill. 378; *Petition of Ferrier*, 103 Ill. 367, 42 Am. Rep. 10; *Ex parte Ah Peen*, 51 Cal. 280; *McCarthy v. Hinman*, 35 Conn. 538; *Ex parte Crouse*, 4 Wharton (Pa.) 9; *Adeline G. Nott's Case*, 11 Fairfield (Me.) 208; *Milwaukee Industrial School v. Supervisors of Milwaukee County*, 40 Wis. 328, 22 Am. Rep. 702; *Van Walters v. Board of Children's Guardians of Marion County*, 132 Ind. 567, 32 N. E. 568, 18 L. R. A. 431; *Farnham v. Pierce*, 141 Mass. 203, 6 N. E. 830, 55 Am. Rep. 452; *In re Kelley, Petitioner*, 152 Mass. 432, 25 N. E. 615; *In re Wares*, 161 Mass. 70, 36 N. E. 586; *Hunt v. Wayne Circuit*

*Judges,* 142 Mich. 93, 105 N. W. 531, 3 L. R. A. (N. S.)
564; *People ex rel. Van Heck v. New York Catholic Protectory,* 101 N. Y. 195, 4 N. E. 177; *Kennedy v. Meara,*
127 Ga. 68, 56 S. E. 243; *Lindsay v. Lindsay,* 257 Ill. 328,
100 N. E. 892, Ann. Cas. 1914 A. 1222, 45 L. R. A. (N. S.)
908; *Wilkeson v. Board of Children's Guardians of Marion
County,* 158 Ind. 388, 62 N. E. 481; *Robison v. Wayne
Circuit Judges,* 151 Mich. 315, 115 N. W. 682; *State v.
Brown,* 50 Minn. 353, 52 N. W. 935, 36 Am. St. 651, 16
L. R. A. 691; *Ex parte Nichols,* 110 Cal. 651, 43 Pac. 9;
*Commonwealth v. Fisher,* 213 Pa. 48, 62 Atl. 198; *State v.
Dunn,* 53 Ore. 304, 99 Pac. 278, 100 Pac. 258; *State v. Eisen,*
53 Ore. 297, 99 Pac. 282, 100 Pac. 257; *In re Sharp,* 15
Idaho 120, 96 Pac. 563, 18 L. R. A. (N. S.) 886; *In re Powell,* 6 Okl. Cr. 495, 120 Pac. 1022; *In re Watson,* 157 N. C.
340, 72 S. E. 1049; *State ex rel. Caillouet v. Marmouget,* 111
La. 225, 35 South. 529; *Mill v. Brown,* 31 Utah 473, 88 Pac.
609, 120 Am. St. 935.

In the case of *State ex rel. Bethell v. Kilvington,* 100
Tenn. 227, 45 S. W. 433, 41 L. R. A. 284, a child was detained without observing the formalities imposed by statute.
The court measured the right of the parent with that of the
state to exercise its parental function and held, upon a *habeas corpus* proceeding, that the child had not been held
under a penal statute, and further,

"But when it clearly appears that it is not for the welfare
of the state or the child that it should be taken from such
an institution, the court will not so direct, but will leave the
child where its safety, purity, and well-being requires. And
this without regard to the informalities of its commitment,
the court, for the time being, acting as its custodian. The
right of the parent is sufficiently guarded by permitting the
parent on *habeas corpus* proceedings to inquire into the propriety or necessity of the detention, and to have the custody
restored, upon a proper showing that he or she is competent,
and a proper person to have charge of the child."

See, also, *Farnham v. Pierce, Milwaukee Industrial School v. Supervisors of Milwaukee County, In re Kelley, Petitioner, Kennedy v. Meara,* and *Prescott v. State, supra.*

In *Dallemagne v. Moisan,* 197 U. S. 169, a seaman was restrained by the chief of police under a requisition issued directly to him by the French consul at San Francisco, under a treaty contracted between the United States and France in 1853. He sued out a writ of *habeas corpus.* On error to the supreme court of the United States, it was urged that no information or indictment had been filed, and that a Federal treaty could not impose upon a state officer a function violating a constitutional right. The court held that, under a statute later in time, the requisition should have been presented to the district court; that the arrest should have been made by the marshal, and that the arrest by the chief of police was unauthorized, and further,

"When, however, the defendant was brought before the district court of the United States upon the writ of *habeas corpus,* that court being mentioned in the statute as one of the authorities to issue warrants for the arrest of the individual complained of, and having power under the statute to examine into the question and to commit the person thus arrested to prison according to the provisions of the act, it would have been the duty of the court, under such circumstances, upon the production of the defendant under the writ, and upon the request of the consul, to have made an examination, and to have committed the defendant to prison if he were found to come under the terms of the treaty. It was, therefore, but a formal objection to the regularity of the arrest, which would have been obviated by the action of the court in examining into the case, and the defendant would not have been entitled to discharge merely because the person executing the warrant was not authorized so to do."

In the case of *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651, 79 N. W. 426, the court held:

"The power to place children under proper guardianship has been exercised by chancellors and judges exercising chancery powers from time immemorial. Said Lord Redesdale in

1828, in *Wellesley v. Wellesley*, 2 Bligh (N. S.), 124, the right of a chancellor to exercise such power has not been questioned for 150 years. Such a proceeding is not a trial for an offense requiring a common-law, or any, jury . . . As said, in substance, in the *Ferrier Case*, the proceeding is not one according to the course of the common law in which the right of trial by jury is guaranteed, but a mere statutory proceeding for the accomplishment of the protection of the helpless, which object was accomplished before the constitution without the enjoyment of a jury trial. There is no restraint upon the natural liberty of children contemplated by such a law,—none whatever; but rather the placing of them under the natural restraint, so far as practicable, that should be, but is not, exercised by parental authority. It is the mere conferring upon them that protection to which, under the circumstances, they are entitled as a matter of right. It is for their welfare and that of the community at large. The design is not punishment, nor the restraint imprisonment, any more than is the wholesome restraint which a parent exercises over his child. The severity in either case must necessarily be tempered to meet the necessities of the particular situation. There is no probability, in the proper administration of the law, of the child's liberty being unduly invaded. Every statute which is designed to give protection, care, and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated, but one of the most important duties which organized society owes to its helpless members is performed just in the measure that the law is framed with wisdom and is carefully administered."

There being no imprisonment or restraint of liberty in the constitutional sense, the state, in the exercise of its prerogative or sovereign right, may take a child from a parent when the parent is unworthy, or if it appear that the child's interest may be best served by so doing. The right may be exercised by warrant, or, if not, it may be adjudged by subsequent proceedings.

"Neither proceedings according to common law, nor judicial proceedings in a formal court for the trial of actions,

are essential to due process. 'Though it generally implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings yet this is not universally true.' " McGehee, Due Process of Law, 52.

"It is a mistaken idea that due process of law requires a plenary suit and a trial by jury in all cases where property or personal rights are involved." *Murray's Lessee v. Hoboken Land & Imp. Co.,* 18 How. (U. S.) 272.

"Due process is not necessarily judicial process." *Reetz v. Michigan,* 188 U. S. 505, 507.

There is much fault in the general conception of liberty. Man in his natural state may have natural liberty if he has the physical power to maintain it. In his civil state he must yield the natural right to obey his impulses and to go at will to the social compact, whatever may be its form. In return society gives to all who subscribe to its forms a guarantee that it will protect him in those "civil" rights which by nature or by due ordination of law are recognized as essential to the health, peace and happiness of the greater number.

"Civil liberty, which is that of a member of society, is no other than natural liberty so far restrained by human laws (and no farther) as is necessary and expedient for the general advantage of the public." 1 Blackstone, Commentaries, 125.

Thus liberty, in so far as it is noticed by government, is restraint rather than license. It is a yielding of the individual will to that of the many, subject to such constitutional guarantees or limitations as will preserve those rights and privileges which are admitted of all men to be fundamental, or, by opposite expression, such rights as are peculiar to the individual and which may be exercised without harm to the social compact.

"It is not natural, but civil, liberty of which a person may not be deprived without due process of law. There are restrictions imposed upon personal liberty which spring from the helpless or dependent condition of individuals in the vari-

ous relations of life, among them being those of parent and child, guardian and ward, teacher and scholar. There are well recognized powers of control in each of these relations over the actions of the child, ward, or scholar, which may be exercised. These are legal and just restraints upon personal liberty, which the welfare of society demands, and which, where there is no abuse, entirely consist with the constitutional guaranty of liberty." *Lindsay v. Lindsay,* 257 Ill. 328, 100 N. E. 892, Ann. Cas. 1914 A. 1222, 45 L. R. A. (N. S.) 908.

Liberty in the civil state is a giving up of natural right in consideration of equal protection and equal opportunity; a sacrifice on the part of the strong that the weak may live; that order may be established and that wrongs and impositions may be condemned and punished. The interest and object of the state is, therefore, to reduce the strong to the level of equal rights and to elevate the weak and helpless to the same plane. To do this the state has the right to insist that every child that is born shall come to the stature of man obedient to the forms of government and in physical and moral health. The state in short, is *parens patriae,* the only limitation being that its power shall not be arbitrarily exercised and that its laws shall operate equally upon all who are similarly situated. This is "due process." This is the meaning of "the law of the land."

We desire to repeat and reaffirm that part of the dissenting opinion wherein it is said that the statute is silent,

"as to detention pending an investigation. It will defeat the law entirely to say that a child cannot be detained for a time under proper, wholesome and helpful surroundings, such as were afforded in this case, and innocent and unoffending children, and those who are simply mischievous, will be subjected to the stigma which attaches to criminal suspects." *Weber v. Doust,* 81 Wash. 668, 675, 143 Pac. 148.

When, therefore, the legislature enacted the juvenile act, it only put in the form of a written statute that power which is inherent in the state. It met an omission of the law, for

theretofore the right of guardianship depended upon and was exercised by an individual acting under a decree made in a particular case. The legislature recognized that the purpose of the law might ofttimes be defeated by the delays incident to necessary preliminary proceedings. *Farnham v. Pierce, supra.*

The statement in the dissenting opinion in this case that a recovery could not be had unless we held the juvenile act to be a penal statute was too broad; for, under the general rules of law, an officer might be liable if, in the exercise of his right to restrain an infant under the provisions of the juvenile act or under the general power *parens patriae*, he went further than the law allowed, or imposed an arrest, as at common law, upon the infant. A person thus detained is not deprived of his common law remedies.

"It is urged, if this course is held lawful, there is no remedy, if a citizen is ever so unjustly charged, by the overseers. We do not so understand the law. They act at their peril. If they cause a citizen to be arrested and restrained, upon an unwarranted assumption of facts, they are answerable in damages." *Adeline G. Nott's Case,* 11 Fairfield (Me.) 208.

If an officer abuses his authority, he is a trespasser *ab initio* and liable for false imprisonment. 1 Cooley, Torts (3d ed.), p. 314.

In other words, an officer acting as such stands in the same relation to the infant as would a guardian appointed by and acting under the due process of a court having jurisdiction to appoint guardians. The only question to occur is whether the officer has acted in furtherance of the law, in good faith, and has done that which he believed to be for the best interests of the child, bringing no wilful harm to it and being actuated by no ulterior purpose. 1 Cooley, Torts (3d ed.), p. 356.

At the first hearing, a majority of the Department were of the opinion that any restraint without a formal complaint

and warrant was an arrest without due process, and did not, for that reason, notice the other assignments of error.

There is some testimony which fairly raises the question whether the defendants were prompted by the spirit of the juvenile act when they laid the hand of the law upon respondent, or whether they restrained her, actuated by an ulterior purpose, to gather testimony in an entirely independent proceeding. It is the opinion of the majority of the court that this difference is sufficient to carry the case to the jury.

Having come to our present conclusion after consideration of the whole case, and finding that the theory which we now adhere to was submitted to the trial judge in the way of requested instructions which were by him rejected, it follows that the case should be reversed and sent back for a new trial.

MORRIS, C. J., MOUNT, CROW, HOLCOMB, and FULLERTON, JJ., concur.

PARKER, J. (dissenting)—I dissent upon the grounds stated in the former opinion. I regard the majority opinion as establishing a rule of law endangering constitutional liberty, in view of the fact that the plaintiff was not arrested or detained as a suspected criminal, but in defiance of the plain procedure expressly provided by the statute.

ELLIS and MAIN, JJ., concur with PARKER, J.