IN THE MATTER OF THE APPLICATION OF RAFAEL BEGAS, BY HER HUSBAND, SANTIAGO BEGAS, FOR A WRIT OF HABEAS CORPUS.

No. 1735.

APPEAL FROM CIRCUIT COURT FIRST CIRCUIT.
HON. F. ANDRADE, JUDGE.

ARGUED MAY 3, 1927.                    DECIDED MAY 23, 1927.

PERRY, C. J., BANKS AND PARSONS, JJ.

INFANTS—*Juvenile Court Act*—*"delinquent children."*

The words "delinquent child," as used in section 2260, R. L. 1925, include any married or unmarried minor otherwise within the terms of the definition contained in said section.

The words "all persons under eighteen years of age," "any child under eighteen years of age" and "child under eighteen years of age," as used in sections 2262, 2263, 2265, 2266 and 2267, R. L. 1925, apply, within the limitations set forth in those sections, to both married and unmarried children.

SAME—*same*—*jurisdiction.*

Under chapter 136, R. L. 1925, the juvenile court has jurisdiction of the person of a married female delinquent child under

eighteen years of age.  Section 3094, R. L. 1925, terminating guardianship upon marriage of female minor, does not apply to wardship of delinquent under chapter 136, R. L. 1925.

HABEAS CORPUS—*record sufficient to show legal custody of juvenile court.*

Record of juvenile court showing (a) filing of verified petition setting up jurisdictional facts and sufficiently charging immorality, to-wit, prostitution, on the part of a married female under eighteen years of age, (b) issuance of summons thereon, (c) appearance of minor and her husband in response to said summons, (d) a hearing upon said petition, (e) admission on the part of the minor of the acts complained of and (f) a declaration by the court that the minor is a delinquent and a ward of the court, is held sufficient upon *habeas corpus* to show that the minor, who was then under arrest for escaping from the detention home to which she had been temporarily remanded by the judge of the juvenile court, was legally in the custody of said juvenile court, as a ward thereof.

OPINION OF THE COURT BY PARSONS, J.
(Banks, J., dissenting.)

This case is before us upon appeal from the decree of the circuit judge dismissing the petition of Santiago Begas for and on behalf of his wife, therein referred to as Rafael Begas, for a writ of *habeas corpus*.  The record shows that the persons above named, as Santiago Vega and Rafaela Santiago, respectively, were married at Lahaina, Maui, on the 30th day of December, 1925, the bride at that time being fifteen years of age.  On the 30th day of November, 1926, a petition signed and verified by Ellen K. Lorenzen was filed in the division of domestic relations of the first circuit court of the Territory of Hawaii, charging that Rafaela S. Begas, then residing at apartment 8, Liliha Street, in Honolulu, Hawaii, for the two months last preceding the date of said petition had been leading an immoral life in that she had, as she admitted, been practicing prostitution.  Said petition further averred that said minor was then in the custody and control of her husband, and prayed

that he be cited to appear at the hearing of said matter and to bring with him said minor and to show cause, if any, why said minor should not be adjudged a ward of said last-named court. Upon said petition a summons was issued directing Santiago Begas to appear with said child before said last-named court, at a time therein named. On December 14, 1926, the return day named in said summons, after a hearing in the division of domestic relations of said first circuit court, at which the said minor and her husband were both present, the said minor, as shown by the clerk's minutes of said proceedings, was declared a delinquent and a ward of said last-named court and remanded to the detention home until further order of the court. On December 13, 1926, said minor escaped from said detention home without the authority and against the will of the juvenile authorities. On December 15, 1926, she was apprehended and incarcerated in the jail at the police station of the City and County of Honolulu in a place separate and apart from adults. The following day a petition for a writ of *habeas corpus* to secure her release was filed in her behalf by her husband, upon whose motion an order was issued by the first judge of the first circuit court appointing said husband next friend of said minor and authorizing him to file and prosecute said petition in her behalf. On December 17, 1926, a writ of *habeas corpus* was issued upon said petition addressed to David K. Trask, sheriff of the City and County of Honolulu, returnable that same afternoon at three o'clock. Return was made by said sheriff at or about the time named in said writ and a traverse to said return was filed December 21, 1926, on which last-named date the matter was heard by said first judge of said first circuit court, who thereafter under date of December 27, 1926, filed a decree in said matter wherein after a recital of material facts,

the following conclusion was recited and the following order was made: "Whereas, it appearing that the juvenile court, under section 2260, Revised Laws of Hawaii, 1925, had jurisdiction of the minor, Rafael Begas, and it further appearing that the proceedings in the juvenile court were due and regular and in accordance with section 2263, Revised Laws of Hawaii, 1925, and it further appearing that Rafael Begas is lawfully in the custody of the juvenile authorities, now, therefore, it is hereby ordered, adjudged and decreed that the petition for a writ of habeas corpus be dismissed, and the same is hereby dismissed." In support of petitioner's appeal from the above-named decree appellant's counsel urge in their opening brief, "First: As the jurisdiction of the juvenile court is a special jurisdiction, limited to that conferred by statute, one brought before it cannot be committed and incarcerated without a signed judgment or decree setting forth the facts upon which its jurisdiction rests. Second: A lawful marriage of a minor female above the age of 15 to a husband above the age of 21, takes the minor female out of the jurisdiction of the juvenile court, so far as the detention of her body is concerned." For convenience the above-quoted propositions are herein considered in reverse order.

1. Section 2261, R. L. 1925, provides *inter alia* that circuit judges sitting in chambers shall have original jurisdiction in all cases under sections 2260 to 2268, inclusive. Section 2260 defines the terms "dependent" and "delinquent" children. It provides in part: "The words 'delinquent child' shall mean any minor who violates any law of the Territory or any county or city and county ordinance or who is incorrigible, vicious or immoral, or who is growing up in idleness or crime or who is an habitual truant from school or who habitually wanders about the streets in public places during school

hours without lawful occupation or employment. Any dependent or delinquent child may be proceeded against in the manner hereinafter provided. * * * Proceedings under this chapter shall not be deemed to be criminal proceedings * * *."

Section 2263 provides as follows: "Upon the filing with the judge of a sworn petition, setting forth upon knowledge or upon information and belief facts showing that any child under eighteen years of age resident within the circuit is a delinquent or dependent child the judge may, before further proceedings are had in the case, give notice thereof to a duly appointed probation officer who shall have opportunity allowed him to investigate the facts. In such case the probation officer shall immediately proceed to make a full examination of the parentage and surroundings of the child and all the facts of the case and report the same to the judge in writing and if after full investigation it shall appear to the judge that the public interest and the interest of the child will be best subserved thereby, a summons shall issue, reciting the substance of the petition and requiring the person or persons having custody or control of the child, or with whom the child may be, to appear with the child at a place and time which shall be stated in the summons, and if such person is other than the parent or guardian of such child, then such parent or guardian shall be notified of the pendency of the case, if he is a resident of the circuit and can be found. If any person summoned as herein provided shall fail, without reasonable cause, to appear with the child or to comply with the order of the judge, he may be proceeded against for contempt of court. In case the summons cannot be served or the parties summoned fail to obey the summons and in any case when it shall appear to the court that such summons might be ineffectual, upon

complaint on oath in writing a similar summons as near
as may be may issue to the child or a warrant of arrest
may issue, reciting the substance of the complaint and
requiring the officer to whom it is directed to bring such
child before the judge to be dealt with according to
law, and such child may be committed to a probation
officer or such other person as the judge may designate,
pending the final disposition of the case.  On the return
of the summons or warrant, or as soon thereafter as
may be, the judge shall proceed to hear and dispose of
the case, and if the allegations against the child are
proved, the court may adjudge the child a delinquent or
dependent child as the case may be.  If it shall appear
to the judge that the public interests and the interests
of such child will be best subserved thereby, he may
order the return of the child to its parents or guardians
or friends, or he may place it, if delinquent, under pro-
bation as hereinafter provided and in all cases he may
decree the child found delinquent or dependent to be the
ward of the court as far as its person is concerned, and
in such cases, where any child has been decreed to be
the ward of the court, the authority of the judge over its
person shall continue until the judge shall otherwise
decree.  The child found delinquent may be placed on
probation for such time during its minority and upon
such conditions as the judge may determine and such
child so released on probation may be furnished with a
written statement of the terms and conditions of release.
At any time during the probationary term of a child
released on probation as aforesaid, the judge may, in
his discretion, revoke or terminate the probation.  If at
any time before discharge the child be found to be wil-
fully wayward, incorrigible or unmanageable and in any
case upon an adjudication of delinquency, if in the
opinion of the judge the welfare of the child and the

public interests so require, the judge may cause it to be sent to the Industrial School for Boys or the Industrial School for Girls, or to any institution authorized by law to receive such child. And in such case, the report, if any, of the probation officer shall be attached to the mittimus and the child shall be placed in charge of some person designated by the judge to be conveyed to the institution, provided that when a girl is to be conveyed to any institution, the judge shall appoint a suitable woman to accompany such girl."

Section 2268 provides in part: "All children, while under the orders of the judge, shall be in the care and custody of the probation officer or such other person as the judge may designate * * *."

Under section 2263 as above set forth three facts only are required to be shown in the petition, namely, (a) that the child over whom the court is asked to exercise jurisdiction is under eighteen years of age, (b) that said child is resident within the circuit and (c) that said child is "dependent" or "delinquent," as those terms are defined by section 2260. Furthermore, the disposition of the child is to be governed by two considerations only, namely, the public interests and the interests of the child, as those interests shall appear to the judge; and there is no provision and no implication in the Juvenile Court Act that the right to the custody of the person of the child on the part of parent, guardian or any other person shall deprive the court of its jurisdiction in the premises.

Section 3094, R. L. 1925, provides in part that "the marriage of any female who is under guardianship *as a minor* shall operate as a legal discharge to her guardian." (The italics are ours.) The above-quoted portion of Section 3094 is identically as it appears in section 1362 of the Civil Code of 1859. The section last above

named is part of chapter 29 of the Civil Code which treats of guardians and wards, naming the events in which guardians of the persons and estates of minors, spendthrifts, and insane persons may be appointed, and setting forth the procedure required for nomination, appointment and qualification of the same, their powers, duties and compensation. The kind of guardians referred to and the incidents and limitations of their authority may be ascertained from an examination of the chapter, which with its later amendments is now chapter 180, R. L. 1925. Needless to say the chapter nowhere refers to wardship on account of delinquency, with which subject it has nothing whatever to do. What are now sections 2260 to 2271, inclusive, of the Juvenile Court Act were enacted at dates beginning in 1905, and later added to and in some instances amended. They are in no way concerned with the ordinary incidents of guardianship, nor do the provisions of the chapter on guardianship interfere in any way with their enforcement. The fact that a child is under guardianship under chapter 180 would not prevent it from becoming a ward of the juvenile court under chapter 136, nor would the termination of the former guardianship have any effect upon the duration of the latter. In this view the provisions of section 3094 do not apply to the wardship of delinquents under chapter 136. Furthermore, parental control being no impediment to juvenile court wardship, emancipation from parental control by marriage of a female under eighteen years of age cannot prevent the jurisdiction of the juvenile court from attaching in a proper case.

In 1914 the supreme court of Washington, *In re Lundy,* 82 Wash. 148, Ann. Cas. 1916E 1007, 1008, was required to pass upon the jurisdiction of the juvenile court in the case of a female child seventeen years of age, who

at the time of said petition had been married for seven months to a man of full age, which marriage had later been annulled by a valid decree. Two questions were presented to the Washington court for consideration, the first of which is thus stated in the report: "Is a girl under the age of eighteen years within the purview of the juvenile law, and subject to the jurisdiction of the juvenile court whether she be married or single?" After quoting the provisions of the Juvenile Court Act, which in the essentials hereinabove set forth are similar to our own, the court continued: "The act, in its application to the delinquent, is not punitive in its nature or purpose. The policy underlying this law is protection, not punishment. Its purpose is not to restrain criminals to the end that society may be protected and the criminal perchance reformed; it is to prevent the making of criminals. Its operation is intended to check the criminal tendency in its inception, and protect the unformed character in the facile period from improper environment and influences. In short, its motive is to give to the weak and immature a fair fighting chance for the development of the elements of honesty, sobriety and virtue essential to good citizenship. While no person, whether minor or adult, should ever be restrained of liberty without due process, and in that respect the statute must be construed with all the strictness of a criminal law (*Weber* v. *Doust,* 81 Wash. 668, 143 Pac. 148) in other respects it should be liberally construed to the end that its manifest beneficent purpose may be effectuated to the fullest extent compatible with its terms. The act, taken as a whole, will admit of no other view. We are asked to hold that because another statute, Rem. & Bal. Code, §8744 (P. C. 69, §3) declares 'All females married to a person of full age shall be deemed and taken to be of full age,' the admitted prior marriage of

the child here involved caused her to become and remain
of full age for all purposes, and that the annulment of
the marriage did not restore her former status as a
minor child, within the purview of the juvenile court
law. The statute referred to, however, in removing the
disabilities of minority, does not use the words 'for all
purposes' which we are asked to read into it. That
statute merely removes the common law disabilities of
minority. It was never intended to prohibit a classifica-
tion of minors for the purposes of legislation, nor to limit
the meaning of the word 'minor' in acts relating to
minors as a class without that exception. As we view
the juvenile court law, we find it unnecessary to enter
into a lengthy discussion of this point, or to determine
whether the annulment of the marriage restored the de-
linquent's status as a minor for all purposes, or for any
purpose. Viewed as a remedial rather than a punitive
statute, we would not be justified in holding that the
definition of a delinquent or dependent person, found
in the language of the first section of the act which we
have quoted, is dominated and controlled by the single
word 'minor,' taken in its technical legal significance
as found in other connections, and as applied in relation
to other things. The purposes of the juvenile court
law have a clear and distinct connection with *age* as
related to discretion and character. In passing it, the
legislature indulged the usual presumptions arising from
human experience that there is ordinarily a lack of
mature discretion, discriminating judgment, and sta-
bility of character in children under the age of eighteen
years; hence, it does not apply to all minor children,
but only to 'all minor children under the age of eighteen
years.' Moreover, the very next sentence of the act omits
the word 'minor' and says 'For the purposes of this act
the words 'dependent child' shall mean any child under

the age of eighteen years' thus defining its own terms. The same omission occurs again in subdivision 18 of this section, in defining the words 'delinquent child' as including 'any child under the age of eighteen years,' etc. Clearly, the age is the controlling element, not the minority. That the purposes of the act are broader and more comprehensive than statutes applicable to minors merely as minors is made clear in the closing clause of this first definitive section, which declares 'for the purpose of this act only,' all delinquent and dependent children (presumably as just before defined), shall be the wards of the state and 'subject to the custody, care, guardianship and control of the court.' When the beneficent purposes of the act are recognized as the controlling motive of the legislature in passing it, we can hardly conceive that the members of that body intended to exempt from the purview of the act those females under the age of eighteen years who had already evinced, by marriage at a tender age, that native recklessness or indiscretion, too often the concomitant of mere physical precocity, which it is one of the objects of the act to guard against and control. Suppose the act applied only to 'minor children' or 'any child,' as later stated, 'under the age of eighteen years,' 'found living or being in any house of prostitution or assignation,' eliminating all save the ninth subivision; would any one suppose that the state's guardianship or the court's tutelage would be held abrogated by any prior marriage of the habitue? We hold that a girl under eighteen years of age is within the purview of the juvenile law and within the jurisdiction of the juvenile court, notwithstanding her prior marriage to a person of full age. There are authorities which take the opposite view, but we adopt this construction of the act advisedly, and believe that in so doing we are carrying out the legislative will and

preserving the sound public policy portrayed by the whole tenor of the act."

The foregoing quotation itself shows the points of difference between the Washington statute and our own and it shows that the reasoning of the Washington court, so far as essentials are concerned, is applicable to our local Act. The Washington Act was interpreted with reference to another statute providing that every female married to a person of full age shall be deemed and taken to be of full age, which last-named statute has no counterpart here. This fact deprives the petitioner of any benefit which she might otherwise derive from the use of the word "minor" in our statutory definition of the words "delinquent child," as set forth in section 2260 above quoted.

In the Washington case above cited the marriage of the minor had been annulled, as above set forth, but the conclusion of the appellate court that the juvenile court had jurisdiction in the premises was not based upon the hypothesis that such annulment had restored to the minor her unmarried status but upon the broader ground that the statute applied to all minors otherwise within its purview, whether married or single.

*In re Lundy* (*supra*) is of persuasive authority, if such authority is needed, that we should not read into our own statute any qualifying words where the terms "any minor" or "any child under eighteen years of age" are used.

The terms *"any* minor," *"all* persons under eighteen years of age" and *"any* child under eighteen years of age" are unambiguous, and from their repeated use the legislative intent may be clearly ascertained without resort to statutory construction. Their literal interpretation involves no injustice, oppression or absurdity even though the Act makes no direct provision for the return

of the wife to the husband and does make a blanket provision for notice of pendency of proceedings to parents and guardians, in certain events, without expressly excluding instances in which the right to custody and control on the part of parents and guardians has ceased. The provision last above quoted and other provisions of the Act give rise to no plain or necessary implication that the term "*any* minor" bears the restricted meaning, any unmarried minor, or any male minor, married or unmarried, and any unmarried female minor or any minor still under the control of parent or guardian.

Said Mr. Justice Brewer in delivering the opinion of the court in *United States* v. *Goldenberg*, 168 U. S. 95, on page 102: "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute."

Said this court in *Shaw* v. *Boyd*, 19 Haw. 83, on page 85: "The intent of the legislature, as gathered from the language used, is the primary consideration in statutory construction, but the general motive with which the legislature may be supposed to have passed the act, such as a consideration of the mischief sought to be remedied, should be resorted to only in construing language which is obscure or ambiguous." And again, in *Estate of*

*Castle,* 25 Haw. 108, on page 118: " 'In the interpretation of statutes words in common use are to be construed in their natural, plain and ordinary signification. It is a very well settled rule that so long as the language used is unambiguous a departure from its natural meaning is not justified by any consideration of its consequences, or of public policy; and it is the plain duty of the court to give it force and effect.' 36 Cyc. 1114."

In the view hereinabove expressed the words "delinquent child," as used in section 2260, R. L. 1925, are held to include both married and unmarried minors otherwise within the terms of the definition contained in said section and the words "all persons under eighteen years of age," "any child under eighteen years of age" and "child under eighteen years of age," as used in sections 2262, 2263, 2265, 2266 and 2267, R. L. 1925, are held to apply, within the limitations set forth in those sections, to both married and unmarried children.

2. The record of proceedings in the juvenile court in the case at bar, though informal and meagre, is sufficient to show jurisdiction. A sworn petition setting up jurisdictional facts and sufficiently charging immorality, to-wit, prostitution on the part of the minor, was duly filed and summons issued thereon, in response to which both the minor and her husband appeared in court. The record further shows a hearing upon said petition, an admission on the part of the minor of the acts complained of and a declaration on the part of the court that the minor is delinquent and a ward of the court. "In such cases," says the statute as quoted, "where any child has been decreed to be the ward of the court, the authority of the judge over its person shall continue until the judge shall otherwise decree." As to the formalities required in the drafting or entering of orders

and decrees in the juvenile court the statute itself is silent, there are no local decisions and the decisions of other jurisdictions furnish no uniform rule for our guidance. Appellant has cited the case of *Juvenile Court of Shelby County* v. *State ex rel. Humphrey*, 201 S. W. 771, as authority for its first proposition, but an examination of the text shows that the Tennessee supreme court expressly declined to pass upon the sufficiency or insufficiency of the order adjudging delinquency in that particular case, the judgment of the lower court being affirmed upon an entirely different ground. In the case at bar enough appears to show that the judge of the juvenile court had acquired and retained jurisdiction of the person of the minor and that she is lawfully in his custody as a ward of the juvenile court.

The decree appealed from is affirmed and the said minor is remanded to the custody of the judge of the juvenile court for further proceedings in conformity with the provisions of chapter 136, R. L. 1925.

*N. K. Lyman* and *J. G. Tyssowski* (also on the briefs) for petitioner.

*C. E. Cassidy*, Deputy City and County Attorney (also on the brief), for respondent.

### DISSENTING OPINION OF BANKS, J.

I most respectfully dissent. Chapter 136, R. L. 1925, does not, in my opinion, confer upon the court of domestic relations jurisdiction over a female minor child who, at the time she is brought before the court on a charge of delinquency, is lawfully married and living with her husband. It is true that section 2260 of this chapter is very broad in its definition of the words "delinquent child" and unless there is elsewhere in the chapter something that indicates that they are to be given a more restricted meaning they are sufficiently compre-

hensive to embrace a child who is married as well as one who is not married. It seems to me that this restriction is found in section 2263 which relates to procedure, probation and commitment. It is provided by this section that, when a child has been properly brought before the court on a charge of delinquency, a summons shall issue reciting the substance of the petition and requiring the person or persons having custody or control of the child to appear with the child at a place and time stated in the summons. It is further provided that if such person is other than the parent or guardian of the child, then such *parent or guardian* shall be notified of the pendency of the case.

When a female minor is lawfully married the marriage emancipates the minor from parental control and from the control of her guardian if she has one. If, therefore, it had been the intention of the legislature to confer upon the court of domestic relations jurisdiction to adjudge such child a delinquent, certainly some provision would have been made for notice to the *husband* of the pendency of the case against his *wife* instead of requiring notice to the *parents* or *guardian* whose control of the child had been, by operation of law, superseded by the control of the husband.

Again, section 2263 provides: "If it shall appear to the judge that the public interests and the interests of such child will be best subserved thereby, he may order the return of the child to its parents or guardians or friends." No provision is made for the return of the wife to her husband, which strongly indicates that the legislature never intended that the court of domestic relations should have authority to take the wife from the custody of her husband. Realizing that it did not intend to authorize the court to take a wife—although a minor—from the custody of the husband, there was,

of course, no necessity to provide for the restoration of such custody to the husband. The court, therefore, was only authorized to restore the child to the custody of the persons from whom it was *authorized* to take it, namely, the "parents or guardians or friends." The Washington case cited in the majority opinion, I think is not applicable. In that case the marriage had been annulled before the juvenile court took jurisdiction of the minor. That is not the situation here at all. In the instant case the marriage was in existence at the time the wife was brought before the court of domestic relations on a charge of delinquency and was living with her husband.